489 P.2d 1021

Jean BARTON, Executrix of the Estate of J. B. Penard, Plaintiff-Appellant,

v.

Francis R. CANNON, sometimes known as F. R. Cannon et al., Defendants.

Elizabeth HART, Plaintiff in Intervention and Respondent,

v.

Jean BARTON, Executrix of the Estate of J. B. Penard, et al., Defendants in Intervention and Appellants.

No. 10582.

Supreme Court of Idaho.

Oct. 20, 1971.

Robert F. McLaughlin, Mountain Home, for appellants.

Cosho, Humphrey & Southcombe, Boise, for respondent Elizabeth Hart.

SHEPARD, Justice.

All original parties to the matters at issue here are now deceased. Defendant F. R. Cannon, now deceased, executed mortgages covering the same piece of real property both to one J. B. Penard and one Mabel Nelson. The Penard mortgage was executed prior in time but recorded subsequent in time to the Nelson mortgage. In July of 1965, Cannon was in default on the Nelson mortgage and, for the purpose of avoiding foreclosure of the Nelson mort-

gage, executed a warranty deed covering the property to Mrs. Nelson. Their agreement provided that upon delivery of the deed the Nelson mortgage and note would be deemed satisfied and cancelled. Cannon also represented verbally to Nelson that the property was free and clear of any encumbrances excepting only the Nelson mortgage.

This action for foreclosure was brought upon the Penard mortgage. Elizabeth Hart, successor in interest to the Nelson mortgage and deed, filed a complaint in intervention. Hart then moved for summary judgment, contending that the warranty deed by Cannon to Nelson should be set aside and the Nelson mortgage reinstated in its original priority. That motion was granted, the summary judgment was entered in favor of the plaintiff in intervention, and this appeal follows.

■ Plaintiff-appellant (Jean Barton, executrix of the estate of J. B. Penard) contends that there were issues of fact remaining to be determined by the trial court relating to the intents of Nelson and Cannon in executing the warranty deed and agreement, and that summary judgment was therefore improper. We reject that contention. Analysis shows that the intentions of the parties to the execution of the Cannon-Nelson deed were not the criteria used to determine whether to set aside a deed and the resultant merger. Therefore, no factual issues as to intent are involved herein. Plaintiff-appellant further argues that the element of fraud remained to be determined as an issue of fact. The element of fraud was amply set forth and raised in the affidavits submitted by the plaintiff-in-intervention. No affidavits countering or controverting those assertions were made or introduced by plaintiff-appellant. While plaintiff-appellant by the introduction of proper affidavits might well have raised the issue of fraud as a controverted and material issue of genuine fact in the case at bar, no such affidavits were made and summary judgment is proper. Prather v. Industrial Investment Corporation, 91 Idaho 682, 429 P.2d 414 (1967); I.R.C.P. 56(e) and (f).

■ Plaintiff-appellant's principal argument in this appeal is to the effect that when Cannon executed the warranty deed to Nelson, the equitable interest of the Nelson mortgage was merged with the legal title and the Nelson mortgage was thus destroyed. Plaintiff-appellant asserts that the trial court was powerless to relieve that merger and reinstate the original mortgage. Plaintiff-appellant also points to the fact that the Penard mortgage was recorded in the interim between the recording of the Nelson mortgage and the execution of the Nelson warranty deed.

It is stated:

"The question of merger of the interests of a mortgagee as mortgagee and his interests as transferee of the mortgagor is primarily a question of intention, and a merger will generally be held to take place where there is an intention to merge the two estates, and not to take place where there is an intention to keep the mortgage alive. This result has been regarded as prevailing whether such intention is expressed or implied. * * *

"In the absence of an expression of intention on the part of the mortgagee at the time he acquires the interest of the mortgagor in the mortgaged property, the general rule is that the mortgage is not merged if it is not to the interest of the mortgagee to have it merged. In such case, it must be presumed that the mortgagee intended to do that which was most advantageous to himself, and if this is that the two estates shall not merge, no merger will take place. This presumption, however, is not conclusive; it may be rebutted by evidence that would warrant a jury in finding that a merger had been expressly agreed to, or that the mortgagee's conduct and action were such as could fairly be ascribed only to an intention to merge." 55 Am.Jur.2d 1026, Mortgages §§ 1258, 1260. See also 95 A.L.R. 628 and 148 A.L.R. 816.

The record herein clearly indicates an intention to extinguish the mortgage and cancel the debt, and the agreement between Cannon and Nelson expressly stated that the note was to be cancelled, and of no further force or effect and that the mortgage would be "satisfied and discharged." Therefore, if the above language constituted the sole theory upon which relief against merger could be granted, plaintiff-appellant would prevail. However, where other liens or interests have intervened during the time between the mortgage and the asserted merger, a different rule has evolved:

> "Turning to cases in which the courts hold that the first mortgage will be preserved or reinstated as against intervening encumbrances or interest, in some of them the mortgage creditor clearly indicated his intention to keep the first mortgage in existence * * *. In a large number of cases in which there is no evidence of intention to keep the prior mortgage alive, other than that it would be to the interest of the mortgage creditor to do so, it is held that there is no merger. *But the courts go beyond this and hold, in spite of an undisputed intent on the part of the mortgage creditor to discharge the first mortgage, that nevertheless he may use it for foreclosure purposes against junior interests.* This is the almost uniform result where the mortgage creditor was ignorant of the intervening lien. Although there is some authority that his negligence in not discovering the existence of the later interest or in mistakenly relying on its not being enforced will prevent him using it against the subsequent claimant, other and, it is believed, better authority holds to the contrary. Indeed the rule may be laid down broadly that, except for the two cases stated at the outset of this section [basically with actual knowledge of or taking with express subjugation to intervening interests] merger will not operate to permit a later encumbrance to be elevated to a position of priority over the first mortgage regardless of its fate

as between the parties to that first mortgage. Actual intent, where it exists, is an adequate basis for the result. The mortgage creditor has a legitimate interest to protect himself against the elevation of the later interest. By bringing a foreclosure action in which they were joined as parties defendant the property could have been sold free and clear of their interests and he could have bought it in that state. Acquisition of the redemption in any other way should not prejudice his position with respect to such junior interests if he did not intend it to do so and was not under a duty to do acts which would have that result. The owner of the junior interest, under such circumstances, cannot object to being kept or put back into his position in the rear because he never bargained for advancement that would come to him by destruction of the first mortgage. *But more generally the decisions may be justified on grounds of unjust enrichment,* a doctrine implicit in the rationale of fairness in giving effect to the mortgage creditor's intent when it appears. By the destruction of the prior mortgage, the later lien or interest is elevated to a priority for which its owner paid nothing and hence is, as to him, a pure windfall. And it is a windfall at the expense of the prior mortgagee. * * * So, too, if he didn't know of the later interest and so didn't know that the result of his action with respect to the first mortgage would be to confer this advantage on it. *That the ignorance or mistake was due to negligence on his part should make no difference.* The only consequence of the negligence is to confer a benefit upon the later lienors or other claimants which, if taken away, would leave them in no worse position that they were before the occurrence. Since it does not put them at any disadvantage or cause them any loss, it should not prevent the first mortgagee from being restored to his position by reinstating his mortgage. *And, it is believed that this principle of restitution to pre-*

*vent unjust enrichment can be justifiably extended to include all cases in which there is no actual intent with respect to the later interest. And there is no ground for automatic merger of it regardless of intent.* Indeed, whether the courts clearly analyse it in this way or not, it would seem to be the best justification of their reiterated statements that in the absence of express intention on the part of the mortgagee his intention will be presumed in accordance with his interests." Osborne, Mortgages, 1951 ed., pp. 773–75. (Emphasis added)

It also appears to be the general rule that where fraud and false representations are the motivation for acceptance by the mortgagee of a conveyance of the property, a merger does not take place even to the extent that the mortgage might have been discharged and the evidence thereof surrendered. 55 Am.Jur.2d 1029, Mortgages § 1265; 95 A.L.R. 628.

It has also been held that where as here the Nelson interests by examining the public records could have learned of the Penard's intervening interests, absence of actual knowledge will still permit relief from the merger. Osborne on Mortgages, 1951 ed.; Fowler Bros. v. Carter, 77 N.M. 571, 425 P.2d 737 (1967); Holzmeyer v. Van Doren, 172 Or. 176, 139 P.2d 778 (1943).

It appears that this is a question of first impression in the State of Idaho and, while there is some split of authority, we believe that the views above expressed and as ruled on by the trial court herein are the more logical and better reasoned. We point out, however, that our decision in the case at bar is to be limited to the facts herein, i. e., fraud on the part of the mortgagor-grantor, no actual knowledge on the part of the mortgagee-grantee of other intervening liens or interests and where the resultant effect lies only between the junior and senior lienors. We do not speak to cases whose facts are outside these parameters, for therein may lie different equitable concepts.

The summary judgment of the trial court is affirmed. Costs to the respondents.

McQUADE, C. J., and McFADDEN and DONALDSON, JJ., concur.

SPEAR, Justice (dissenting).

I dissent.

The principal reason for this dissent is because the reasoning applied in the majority opinion necessarily results in an abrogation of the effectiveness of the recording statutes of the State of Idaho relative to the conveyances or transfers of real property. The pertinent statutes are: I.C. §§ 55–811,[1] 55–812[2] and 55–813.[3] These statutory provisions can hardly be classed as "newcomers" to the Idaho law for, with but one exception, they have been a part thereof since 1864. The one exception is

---

1. § 55–811. Record as notice.—Every conveyance of real property acknowledged or proved, and certified, and recorded as prescribed by law, from the time it is filed with the recorder for record, is constructive notice of the contents thereof to subsequent purchasers and mortgag(e)es.

Every conveyance of real property acknowledged or proved, and certified, and recorded as prescribed by law, and which is executed by one who thereafter acquires an interest in said real property by a conveyance which is constructive notice as aforesaid, is, from the time such latter conveyance is filed with the recorder for record, constructive notice of the contents thereof to subsequent purchasers and mortgagees."

2. § 55–812. Unrecorded conveyance void against subsequent purchasers.—Every conveyance of real property other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded."

3. § 55–813. Conveyance defined.—The term "conveyance" as used in this chapter, embraces every instrument in writing by which any estate or interest in real property is created, alienated, mortgaged or encumbered, or by which the title to any real property may be affected, except wills.

the second paragraph of I.C. § 55–811, which was added to that section in 1941.

The key words in these statutes are "constructive notice," for upon the interpretation thereof lies the solution to the cause at bar.

It is pointed out in American Jurisprudence that:

"The doctrine of constructive notice rests on the idea that all persons may learn and actually know that of which the law gives notice and implies knowledge. The notice imparted by the due and proper record of an instrument, although called a constructive notice, is just as effectual for the protection of the rights of the parties as an actual notice by word of mouth, or otherwise." (emphasis supplied) (45 Am.Jur. at page 468, Record and Recording Laws § 86.)

In this same section of American Jurisprudence it is pointed out that the oft-repeated phrase that a properly or regularly recorded instrument gives notice "to all the world" really means that the record is open to all and is notice to interested parties. The record of an instrument is notice only to those who are bound to search for it. Thus those who, by the terms of the recording laws, are charged with the constructive notice of the record of an instrument affecting land are, therefore, those who are bound to search the records for that particular instrument.

The same authority in § 87 page 469 continues the general discussion of this subject as follows:

"In general, under the recording laws, the recording of a deed or mortgage or other instrument entitled to be recorded is constructive notice to purchasers and encumbrancers who, subsequent to the recording, acquire some interest or right in the property under the grantor or mortgagor. A subsequent encumbrancer or purchaser must know or take notice of the condition of the record title up to the time of creating the encumbrance or making the sale, for it is his duty to examine the record."

Idaho has specifically recognized this principle and held that one who furnishes material for the construction of improvements on lands, the record title of which is in a person other than the one ordering the improvements, is bound to take notice of the record. Boise Payette Lumber Co. v. Bickel, 42 Idaho 245, 245 P. 92, 45 A.L.R. 575 (1926). The court specifically pointed out that the actual owners at all times had been in actual possession of their land and additionally held:

"Their title was of record, of which appellant was bound to take notice." (42 Idaho at page 253, 245 P. at page 94)

For an interesting case concerning the interpretation and effectiveness of records and recording law, see Eckland v. Jankowski et al., 407 Ill. 263, 95 N.E.2d 342, 22 A.L.R.2d 1102 and cases noted at 22 A.L.R.2d 1121.

Constructive notice has also been defined as a legal inference or a legal presumption of notice which may not be disputed or controverted; it is notice which is imputed by law. In point of literal fact, constructive notice is neither notice nor knowledge, but is a fiction by which, for the promotion of sound policy or purpose, the legal rights and interests of the parties are treated as though they had actual notice or knowledge. The term is sometimes applied indiscriminately both to notice that is not susceptible of being explained or rebutted and to that which may be, but seems more appropriately applicable to the former kind of notice as distinguished from "implied notice" which is based on a presumption of fact. One kind of constructive notice is notice which results from a record or which is imputed by the recording statutes, and the other is notice which is presumed because of the fact that a person has knowledge of certain facts which should impart to him, or lead him to, knowledge of the ultimate facts. We are, of course, concerned only with the former in the case at bar. For these general principles, see 66 C.J.S. Notice § 6, pp. 639–640.

The same conclusion, i. e., that a proper and regular recording of a chattel mortgage becomes conclusive notice to anyone later dealing with that chattel, is reached by a California court in Bell v. Sage, 60 Cal.App. 149, 212 P. 404 (Cal.1922—D.C. App.3d dist., rehearing denied, hearing denied by S.Ct. Feb. 13, 1923). The court summarized its holding as follows:

"* * * While the decisions bearing directly upon the question under consideration are not numerous and text-writers have generally omitted the discussion thereof, it is believed that the conclusion reached is supported by both reason and the weight of authority. In the absence of statutory provison, the record of a chattel mortgage would not constitute notice for any purpose. When the terms of the statute are complied with, the record becomes conclusive notice, often contrary to the fact. * * *" (212 P. at p. 406)

Thus, in my opinion, "constructive notice" provided for in the first paragraph of I.C. § 55–811 by the due and regular recording of any conveyance of any Idaho property, as defined in I.C. § 55–813, a mortgage being included therein, is tantamount to actual notice by any subsequent purchaser or mortgagee.

The applicability of this interpretation of our recording statutes to the case at bar is readily discernable when one considers the facts, the pertinent portions of which are as follows: (1) Penard loaned Cannon $5000 as evidenced by a promissory note secured by a real property mortgage on the premises involved in this cause of action, which mortgage was executed on February 10, 1961 but not recorded until September 21, 1964; (2) Nelson loaned Cannon some $13,000 evidenced by a promissory note and secured by a real property mortgage on the same premises involved in the Penard mortgage, executed by Cannon on April 1, 1963 and recorded April 17, 1963; (3) to escape the necessarily attendant expenses of a foreclosure action of the Nelson mort-

gage, Cannon suggested that Nelson accept a warranty deed with the agreement that the promissory note of April 1, 1963 be "cancelled" and "of no further force nor effect" and that the mortgage of April 1, 1963 would be *"satisfied and discharged."* (emphasis added) This agreement was made and the deed from Cannon and his wife to Nelson was executed on July 26, 1965; (4) Cannon also represented to Nelson, both orally and in writing, that the premises were free and clear of encumbrances at the time of the agreement and the execution of the deed, i. e., July 26, 1965; (5) the record is not clear on whether, in fact, the Nelson mortgage was satisfied and discharged as a matter of record.

Thus it will be seen that the Penard mortgage was first in time, being executed February 10, 1961, as compared to the April 1, 1963 date of the Nelson mortgage. However, the Nelson mortgage was recorded first, i. e., on April 17, 1963 as compared to September 21, 1964 for the Penard mortgage.

It was contended in the trial court, and this contention is again asserted on appeal by the representatives of the Penard interests, who incidentally instigated this litigation by commencing an action to foreclose the defaulted mortgage, that the acceptance of the warranty deed by Nelson coupled with the agreement that the note be cancelled and that the mortgage be satisfied and discharged constituted a merger of the mortgage interest with the interest in fee; and therefore the Penard mortgage which had always been prior in time to the Nelson mortgage and which had been duly recorded prior to the merger date constituted an enforceable lien on the premises.

The majority opinion recognizes the merger principle and correctly quotes the general rule that the question of merger of the interests of mortgagee with that of that holder of the title in fee upon transfer thereof by the mortgagor is primarily a question of intention. The general princi-

ples involved are aptly stated in American Jurisprudence, as follows:

> "The question of merger of the interests of a mortgagee as mortgagee and his interests as transferee of the mortgagor is primarily a question of intention, and a merger will generally be held to take place where there is an intention to merge the two estates, and not to take place where there is an intention to keep the mortgage alive. This result has been regarded as prevailing whether such intention is expressed or implied." (55 Am.Jur.2d 1025 Mortgages § 1258)

> "In the absence of an expression of intention on the part of the mortgagee at the time he acquires the interest of the mortgagor in the mortgaged property, the general rule is that the mortgage is not merged if·it is not to the interest of the mortgagee to have it merged. In such case, it must be presumed that the mortgagee intended to do that which was most advantageous to himself, and if this is that the two estates shall not merge, no merger will take place. This presumption, however, is not conclusive; it may be rebutted by evidence that would warrant a jury in finding that a merger had been expressly agreed to, or that the mortgagee's conduct and action were such as could fairly be ascribed only to an intention to merge." (55 Am.Jur.2d 1026 Mortgages § 1260)

After quoting these general principles, the majority opinion concedes that "[t]he record herein clearly indicates an intention to extinguish the mortgage and cancel the debt, and the agreement between Cannon and Nelson expressly stated that the note was to be cancelled, and of no further force or effect and that the mortgage would be 'satisfied and discharged.'" But the majority then rationalizes that these principles do not govern in this instance because the mortgagee could not have intended a merger under the circumstances here involved when obviously such merger would not be for her best interests. The authority relied upon for this theory is Osborne on Mortgages, the basic principle of

which is not applicable here. One of the emphasized portions of *Osborne* quotation contained in the majority opinion serves to illustrate my point wherein it is stated:

> "But the courts go beyond this and hold, in spite of an undisputed intent on the part of the mortgage creditor to discharge the first mortgage, that nevertheless he may use it for foreclosure purposes against junior interests. *This is the almost uniform result where the mortgage creditor was ignorant of the intervening lien.*" (emphasis supplied) (Osborne, Mortgages 773–74 1951 Ed.)

As previously discussed at the beginning of this dissent, it is my opinion that under the Idaho recording statutes the constructive notice provided therein is tantamount to actual notice; and that the mortgage creditor here (Nelson) cannot claim ignorance of the so-called intervening lien which had been regularly recorded for several months prior to her acceptance of the warranty deed from Cannon.

Secondly, there is still serious doubt in my mind whether under the facts in this case the Penard mortgage can be accurately described as an "intervening lien," because it must be remembered that the Penard mortgage is prior in time to the Nelson mortgage although recorded later.

Thus in my opinion the equities lie with the appellant Barton insofar as knowledge by Nelson of the Penard recorded mortgage prior to the merger is concerned.

The majority opinion also relies on a general rule that "where fraud and false representations are the motivation for acceptance by the mortgagee of a conveyance of the property, a merger does not take place even to the extent that the mortgage might have been discharged and the evidence thereof surrendered." The authorities cited are 55 Am.Jur.2d § 1265 of Mortgages and 95 A.L.R. 628. I do not find these authorities impelling in view of the interpretation to be given the "constructive notice" in our recording statute. Additionally, the authorities in the A.L.R. citation are divided or split. Too, the facts in some

of them which on their face appear to be in accord with the general rule being applied by the majority opinion here are readily distinguishable. For instance, in Howard v. Clark, 71 Vt. 424, 45 A. 1042, 95 A.L.R. 648, although it appeared that the first mortgagee intended to accept a deed of equity of redemption in consideration of the discharge of the mortgage debt, nevertheless it was held that where he was induced to accept the deed by the mortgagor's fraudulent representation that the premises were not otherwise encumbered, equity would relieve him from the unconscionable position in which the mortgagor's fraud had placed him, by reinstating him in his rights under his mortgage and the note secured thereby, as existed before the taking of the deed, *as against a junior mortgagee who had taken his mortgage with knowledge of the senior mortgage.* As previously pointed out, the Penard mortgage was executed some two years *prior* to the Nelson mortgage in the case at bar. It is difficult for me to perceive how the fraud on the part of Cannon unknown to, and not participated in by, Penard can constitute grounds for denying the enforcement of the Penard lien against the property involved.

In my opinion the trial court committed error in granting respondent's motion for a summary judgment. The cause should be remanded for trial on the merits with the Penard mortgage given priority as a lien against the fee title of the Nelson representatives.