625 P.2d 1098

Dorothy RASMUSON, Plaintiff-Appellant, and Cross-Respondent,

v.

WALKER BANK & TRUST COMPANY, a corporation, Defendant-Respondent, and Cross-Appellant.

No. 13256.

Supreme Court of Idaho.

March 23, 1981.

**96**

Emil F. Pike, Twin Falls, for plaintiff-appellant, and cross-respondent Rasmuson.

James S. Lowrie and Gregg I. Alvord, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for defendant-respondent, and cross-appellant Walker Bank & Trust Co.

DONALDSON, Justice.

This case is an appeal and cross-appeal of a district court's granting of summary judgment in part for plaintiff and in part for defendant regarding, inter alia, the reasonableness of the opportunity to respond to an affidavit filed shortly before summary judgment proceedings, the prohibiting of the trustee from charging costs and attorney fees against the trust, the trustee's management and sale of capital stock trust assets, and the infliction of emotional distress.

## STATEMENT OF FACTS

Mr. J. S. Hanzel bequeathed considerable wealth including farm property in Cassia County and 100 shares of capital stock in Cassia National Bank (hereinafter Cassia) to Walker Bank & Trust of Utah (hereinafter Walker) in trust. His daughter, plaintiff-appellant Dorothy Rasmuson, was one of the trust's beneficiaries. In his Will, he directed the trustee not to sell the Cassia stock unless the present directors of Cassia sell their stock.

After Hanzel's death but prior to delivery of the estate assets to the trustee, Cassia merged with the Bank of Idaho, a subsidiary of Western Bancorporation (hereinafter Western). At the time of merger, all Cassia shareholders, including Cassia's directors and the executor of the Hanzel estate, exchanged their Cassia shares for shares of Western. Specifically, the executor exchanged the 100 Cassia shares for 2,540 shares of Western. These 2,540 Western shares were later transferred to trustee Walker along with the other assets of the trust. Mrs. Rasmuson informed trustee Walker of the merger and of her desire that the Western stock not be sold. When a Walker trust officer visited her in 1973 in Idaho, she agreed to the limited sale of 1,000 shares of Western. The remaining 1,540 shares were sold in July of 1976 without her consent or court approval.

Trustee Walker received stored corps as rental payments for the farm land held in trust. In 1976, the farmer-tenant informed Mrs. Rasmuson that some of the stored corps had not yet been sold. Mrs. Rasmuson soon thereafter informed the trustee of this fact. It was later discovered that the produce received in 1974, 1975, and 1976 had not been marketed. Walker than marketed the crops at a price lower than the crops would have been sold for in 1974 or 1975. On November 14, 1976, Mrs. Rasmuson requested restoration of the trust assets lost due to the trustee's marketing oversight. Walker offered restoration of lost assets to the trust provided that plaintiff give defendant a release for all claims. Unwilling to release all claims, Mrs. Rasmuson filed a complaint on June 30, 1977. Walker paid $8,286.19 restoration on March 8, 1978. This restoration sum represented the difference between the market price existing at a reasonable time after harvest and the market price actually obtained, plus five percent interest. Plaintiff later agreed with defendant's calculations except she maintained that the proper interest rate was between six and eight percent.

Plaintiff's complaint sought the following remedies: (1) damages for breach of the trustee's fiduciary duty by failing to timely market the 1974 and 1975 crops, (2) damages for breach of the trustee's fiduciary duty by selling the Cassia stock at a loss without proper authorization, (3) removal of Walker as trustee, (4) damages for the infliction of emotional suffering caused by negligent, bad faith and reckless trust management, and (5) attorney fees and costs for

all counts. After a short discovery phase, defendant Walker moved for summary judgment as to one and two and for judgment on the pleadings as to three and four. Since matters outside the pleadings were presented to and accepted by the district court, it treated all motions as ones for summary judgment.

In the afternoon of the last workday immediately prior to the day of the summary judgment proceeding, plaintiff filed the affidavit of Robert D. Seibel, a person engaged in the general business of stock brokerage and investments. At the summary judgment proceeding on January 2, 1979, defendant Walker requested that the court proceed with the motion for total summary judgment on all counts in spite of the late filing of the Seibel affidavit. Additionally, Walker argued that Mr. Seibel's affidavit was irrelevant to this lawsuit and that Walker's answers to plaintiff's interrogatories nullified the statements presented by Mr. Seibel's affidavit. Walker's counsel also stated that he had "agreed to hear this matter that [plaintiff] has been raising without giving [him] much notice at all...." While taking the summary judgment under advisement, the district court informed both parties that they could submit additional information but that the court would not delay disposing of the case waiting for it. Defendant Walker submitted no additional information.

On January 8, 1979, the trial court granted summary judgment in part to the moving party, defendant Walker, and in part to the nonmoving party, plaintiff Rasmuson. The court required defendant Walker in regards to the proceeds from the sale of the crops to pay $895.41 additional interest, $60.05 interest from March 8, 1978, and $500 attorney fees; dismissed the count relating to the sale of stock; ordered defendant to petition for withdrawal as trustee in the appropriate court and pay all related expenses with no charge to the trust; dismissed the counts seeking damages for emotional suffering; denied all other requests for attorney fees and costs; and directed that the trust not be charged with any costs or attorney fees.

## SUMMARY JUDGMENT

Defendant Walker argues on cross-appeal that since the plaintiff had no summary judgment motion pending before the court, it was improper for the district court to grant partial summary judgment for the plaintiff.

In *Huyck v. Heckla Mining Co.*, 101 Idaho 299, 300, 612 P.2d 142, 143 (1980), this Court stated:

"[T]hat summary judgment should be granted only when the pleadings, depositions and admissions, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. The facts are to be liberally construed in favor of the party opposing the motion, who is also to be given the benefit of all favorable inferences which might be reasonably drawn from the evidence." (citations omitted).

Furthermore, this Court has recognized that a district court is empowered to grant summary judgment to a nonmoving party in appropriate circumstances. *Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 476, 583 P.2d 997, 1011 (1978). *See Idaho State University v. Mitchell*, 97 Idaho 724, 733, 552 P.2d 776, 785 (1976); *Glenn Dale Ranches, Inc. v. Shaub*, 94 Idaho 585, 587 n. 4, 494 P.2d 1029, 1031, n. 4 (1972). Whether summary judgment is appropriate under the circumstances of the respective issues in this case is discussed below.

## REASONABLE OPPORTUNITY TO RESPOND

In the case at bar, defendant Walker further argues on cross-appeal that it did not have a reasonable opportunity to respond to Mr. Seibel's affidavit. The record indicates that defendant Walker did not file pursuant to I.R.C.P. 56(f) opposing affidavits or affidavits stating that it could not present opposing affidavits because of the short notice. *Barton v. Cannon*, 94 Idaho 422, 489 P.2d 1021 (1971); *Praether v. In-*

*dustrial Inv. Corp.*, 91 Idaho 682, 429 P.2d 414 (1967). Additionally, the defendant raised no objection at the summary judgment proceeding to the Seibel affidavit even though Walker's counsel recognized that the affidavit had not given him much opportunity to respond to the argument that it raised. Instead, defendant Walker's counsel requested that the court proceed with the summary judgment. At the ensuing proceeding, he then argued against the affidavit. Finally, the court provided the defendant with an opportunity to submit additional information following the summary judgment proceeding, but the defendant took no action. In light of these circumstances, defendant Walker is in no position to contend that it had no reasonable opportunity to respond to Mr. Seibel's affidavit.

## COSTS AND FEES AGAINST TRUSTEE

■ On cross-appeal, defendant Walker claimed that the district court was not the court of registration and, therefore, had no jurisdiction to order that costs and attorney fees not be charged against the trust. We disagree.

I.C. § 15–7–101 provides in part that:

"The trustee of a trust having its principal place of administration in this state shall register the trust in the court of this state at the principal place of administration. Unless otherwise designated in the trust instrument, the principal place of administration of a trust is the trustee's usual place of business where the records pertaining to the trust are kept, or at the trustee's residence if he has no such place of business. . . . The duty to register under this part does not apply to the trustee of a trust if registration would be inconsistent with the retained jurisdiction of a foreign court from which the trustee cannot obtain release. [I.C., § 15–7–101, as added by 1971, ch. 111, § 1, p. 233.]"

I.C. § 15–7–103 states that one of the effects of registration is that "the trustee submits personally to the jurisdiction of the court in any proceeding under [section] 15–7–201 of this code relating to the trust that may be initiated by any interested person while the trust remains registered." The comment to the official text of I.C. § 15–7–103 indicates that that section provides for jurisdiction over the parties while subject matter jurisdiction for proceedings involving trusts is described in I.C. §§ 15–7–201 and 15–7–202. The comment to I.C. § 15–7–103 further states that "[c]learly the trustee can be deemed to consent to jurisdiction by virtue of registration. This basis for consent jurisdiction is in addition to and not in lieu of other bases of jurisdiction during or after registration."

In the case at bar, plaintiff's complaint alleged jurisdiction pursuant to I.C. § 5–514. Defendant's answer admitted in personam jurisdiction. Neither party presented evidence regarding the place of trust registration. Trustee Walker consented to in personam jurisdiction aware that the complaint dealt with several issues regarding administration of the trust.

I.R.C.P. 15(b) states in part:

"When issues not raised by a pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

The issue of whether the trustee must individually pay costs and attorney fees or may charge them against the trust was implicit in the complaint and, therefore, the issue was properly before the court.

In order to determine the district court's subject matter jurisdiction,[1] I.C. §§ 15–7–

---

1. Since trustee Walker limited its argument to the issue of attorney fees and costs, it would appear that trustee Walker only raised the issue of in personam jurisdiction and not subject matter jurisdiction. Therefore, the Court raises this issue on its own. If the district court had no subject matter jurisdiction for the issue of attorney fees and costs, it would not have had

201, 15–7–202, and 15–7–203 must all be reviewed. I.C. § 15–7–201 provides that "[t]he court of registration has exclusive jurisdiction of proceedings initiated by interested parties concerning the internal affairs of trusts." I.C. § 15–7–202 provides:

"Venue for proceedings under section 15–7–201 of this Part involving registered trusts is in the place of registration. Venue for proceedings under section 15–7–201 of this Part involving trusts not registered in this state is in any place where the trust properly could have been registered, and otherwise by the rules of civil procedure. [I.C., § 15–7–202, as added by 1971, ch. 111, § 1, p. 233.]"

I.C. § 15–7–203 provides:

"The court will not, *over the objection of a party,* entertain proceedings under section 15–7–201 of this Part involving a trust registered or having its principal place of administration in another state, unless (1) when all appropriate parties could not be bound by litigation in the courts of the state where the trust is registered or has its principal place of administration or (2) when the interests of justice otherwise would seriously be impaired. The court may condition a stay or dismissal of a proceeding under this section on the consent of any party to jurisdiction of the state in which the trust is registered or has its principal place of business, or the court may grant a continuance or enter any other appropriate order. [I.C., § 15–7–203, as added by 1971, ch. 111, § 1, p. 233.]" (emphasis added).

It is important to note that I.C. § 15–7–202 provides venue in courts other than the court of registration when the proceeding involves trusts not registered in this state. Likewise, I.C. § 15–7–203 recognizes that a court, which is not the court of registration, may in the appropriate circumstances "entertain proceedings under section 15–7–201" when the trust is registered or has its principal place of administration in another state. Both I.C. § 15–7–202 and 15–7–203

clearly recognize that in the appropriate circumstances an Idaho district court may have subject matter jurisdiction even though it is not the court of registration. For these three statutes to be read consistently together, I.C. § 15–7–201's "exclusive" jurisdiction must be read to pertain only to those trusts with courts of registration in this state.

■ In the case at bar, the record does not disclose if or where the trust is registered. The Last Will and Testament of James S. Hanzel appoints Walker Bank and Trust Company of Salt Lake City, Utah, trustee. The record also states that Mrs. Rasmuson and her attorney traveled to Salt Lake City to discuss the trust with the trustees. It seems clear that the principal place of administration of the trust under I.C. § 15–7–101 was Salt Lake City, Utah.[2] Since this trust has its principal place of administration in a state other than Idaho, the district court had proper subject matter jurisdiction under I.C. § 15–7–201.

I.C. § 15–7–203 under a forum non conveniens concept specifically requires a party to object before the court is required to review whether it will entertain a proceeding involving a trust registered or having its principal place of administration in another state. Without an objection from a party, the court may proceed to entertain the actions. Since no objection was made by trustee Walker in the present case, the district court properly entertained the actions.

### MANAGEMENT AND SALE OF WESTERN STOCK

■ On appeal, plaintiff Rasmuson argues that trustee Walker's sale of the 1,540 shares of Western stock was prohibited by the terms of the trust instrument and was a breach of the trustee's fiduciary duties.

I.C. § 15–7–302 defines the standard of care and performance expected of trustees as follows:

subject matter jurisdiction for the other issues of this proceeding as well.

2. Utah passed statutes similar to Idaho's Trust Administration statutes except Utah omitted the sections pertaining to trust registration.

"Except as otherwise provided by the terms of the trust, the trustee shall observe the standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another, and if the trustee has special skills or is named trustee on the basis of representations of special skills or expertise, he is under a duty to use those skills. [I.C., § 15–7–302, as added by 1971, ch. 111, § 1, p. 233.]"

Mr. Hanzel's Will specified several powers and duties of the trustee including the following:

"I direct that my said Trustee not sell the stock in the Cassia National Bank except that in the event the present directors of the Cassia National Bank sell their stock, then I direct that the Cassia National Bank stock shall be sold by my Trustee . . . . [T]he Trustee shall have the following powers: (a) To manage, control, sell and convey property belonging to said trust estate. (b) To retain property and invest and reinvest as provided by law from time to time existing . . . ."

Trustee Walker never received any Cassia stock. The facts and inferences of the case at bar do not support plaintiff's attempts to characterize Western stock as the equivalent of Cassia stock. Therefore, Mr. Hanzel's directive to the trustee concerning the sale of Cassia stock did not constrain trustee Walker's management or sale of Western stock. Furthermore, the record does not raise any other genuine issues of material fact regarding trustee Walker's exercise of its duties in the management and sale of the Western stock. The district court's ruling regarding the sale of stock is affirmed.

## INFLICTION OF EMOTIONAL DISTRESS

The plaintiff also appeals the district court's dismissal of her counts seeking recovery for negligent and intentional infliction of emotional distress caused by negligent, bad faith and reckless trust management. This Court's recent opinion in *Hatfield v. Max Rouse & Sons Northwest*, 100 Idaho 840, 606 P.2d 944 (1980), specifies the requirements to successfully bring these torts. Inasmuch as there were no allegations of physical manifestations involved in the case at bar, the tort of negligent infliction of emotional distress does not lie. *Hatfield, Id.*

In regards to the tort of intentional infliction of emotional distress, *Hatfield, Id.* at 849–850, 606 P.2d at 953–954, stated:

"Dean Prosser and other commentators have recognized the concern of the courts that a rule of law which allows recovery of damages for emotional distress in the absence of any physical injury may lead to the pressing of fraudulent claims. Prosser, The Law of Torts, 328 (4th ed. 1971); Prosser, Insult and Outrage, 44 Calif.L.Rev. 40 (1956); Comment, Iowa Tort Liability for the Intentional Infliction of Emotional Distress, 62 Iowa L.Rev. 1141 (1977). For this reason the tort of intentional infliction of emotional distress is generally held to lie only in the presence of outrageous intentional conduct on the part of the defendant which leads to severe emotional distress. By requiring both conduct of an 'outrageous' nature and 'severe' emotional distress this rule affords courts a means of limiting fictitious claims . . . .

. . . .

"However one defines what persons can expect from society it is plain that courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress." (citations omitted).

In the case at bar, plaintiff Rasmuson is a sixty-five year old widow with physical handicaps, who relies on the trust for her present and future financial security. She alleges that trustee Walker's management of the trust has caused her "to suffer from mental and emotional anguish." The district court granted partial summary judgment to defendant Walker and we have affirmed in regards to trustee Walker's handling of the Western stock. Furthermore, trustee Walker made restoration of the trust assets in regards to the proceeds

from the sale of the crops. The evidence of emotional distress in the case before us, standing unrefuted and viewed most favorably to plaintiff, compels us to hold as a matter of law that the distress was not sufficiently severe to have justified preclusion of summary judgment on this issue.

The district court decision stated:

"It has not been revealed to me that the law is now ready to embrace [such a claim], and for good reasons. Even the most prudent investor, it must be conceded, finds some cause for anxiety when considering the simple question: Buy or sell? The considerations to be taken into account are overpowering: The money market, inflation, stock and bond markets, the farm market, taxes, even a word from the President or one of his top advisors, to name a few.

"The assets in this case belong not to the beneficiary but to the trust. Yes, plaintiff has an interest in the management of those assets because of her basic interest in the income they produce. But if the assets are mismanaged and loss results to the trust corpus, the remedy is restoration to the corpus, ultimately benefiting the beneficiary. . . . Mental suffering in the tort field is one thing. In the fiduciary and economic field it is quite another."

Since plaintiff has offered no evidence that can create a reasonable inference of the extreme conduct required to establish the intentional infliction of emotional distress, it is unnecessary for us to decide at this time whether this type of action would lie in a breach of a trustee's fiduciary duty.

We have considered the remaining issues raised on appeal and cross-appeal and find no error in the district court's rulings. The district court is affirmed. No attorney fees or costs allowed on appeal or cross-appeal.

McFADDEN and SHEPARD, JJ., concur.

BISTLINE, Justice, specially concurring.

It is with some hesitation that I concur in that part of the Court's opinion dealing with the management and sale of the Western stock.

Mrs. Rasmuson argues in connection with this sale that it violated the express terms of the will and that the trustee had recognized this when it discussed the initial partial sale of the stock with Mrs. Rasmuson. It does seem passing strange for a trustee to first discuss a partial sale of specified stock with the beneficiary, at which time the beneficiary expressly states that she does not want any more of the stock sold, and then turn around later and sell the rest of the stock without discussing it with the beneficiary, particularly where the sale occurred shortly after the dispute over the sale of crops. This conduct might well be thought of as insensitive and arrogant. Since the trustee knew the position of Mrs. Rasmuson, it is not unreasonable to wonder why the trustee would not have first discussed the matter with her. If she would not agree to the sale, and if the trustee still felt a pressing need to consummate the sale, the courts were open to the trustee and there could have been adjudicated the question of whether or not the trustee actually did have the authority to sell this stock. A failure or refusal to take these simple steps tends to demonstrate nothing but an arbitrary display of power, hardly illustrative of the faith placed in the trustee by Mr. Hanzel.

However, we have not been cited to, nor can I find, any rule of law which gives a beneficiary such as Mrs. Rasmuson any right of control over the management of trust assets, and no clear-cut principles which would establish any mal or misfeasance in the trustee's conclusion that the merger was tantamount to a sale. The issue before us is not whether the actions taken constituted sound business practices designed to promote trust and confidence in the trust management, but rather whether the trustee's authority to sell this particular stock was a proper issue for disposition on summary judgment under the unique facts presented in this case. Although the question is very close, I am not persuaded on the appeal that the district court erred in any of the conclusions which he reached, includ-

ing that the will did not bind the trustee in its sale of the Western stock.

Accordingly, I limit my concurrence to simply voting to affirm Judge Bellwood's decision, and specifically decline to join in an opinion which espouses the emotional distress principles set forth in *Hatfield v. Rouse*, 100 Idaho 840, 606 P.2d 944 (1980). As Chief Justice Donaldson was to note of *In re Chase's Estate*, 82 Idaho 1, 348 P.2d 473 (1960) "only three judges participated in the opinion, and *one was a district judge* . . . ." *In re Estate of Cooke*, 96 Idaho 48, 54, 524 P.2d 176, 182 (1974) (emphasis added). It may be noted that in *Hatfield four* were district judges.

It is my considered view that much, in fact most, of what was written in *Hatfield* may not withstand close examination, and for my own part, I have not heard the other members of the Court engage in any discussion as to *Hatfield's* validity. Hence, until a proper time when the Court has discussed the *Hatfield* rules and holdings, I would feel ill at ease in blithely accepting that case as any great pronounciado of the law.

BAKES, Chief Justice, concurring in part and dissenting in part:

I dissent only from that portion of today's opinion entitled "Costs and Fees Against Trustee." I concur with the majority opinion in all other respects.

The court below ordered the trustee, Walker, to bear its own attorney fees incurred in defense of Rasmuson's suit. The court prohibited Walker from charging the fees against the corpus of the trust. On appeal, Walker objects to the lower court's decision on two grounds. Firstly, Walker points out that the court's decision came *sua sponte*, without any prior notice, the issue having never been raised by either party. Secondly, Walker maintains that the district court was not the proper forum for adjudication of issues relating to the internal affairs of the trust. Both arguments are persuasive.

The majority's citation to I.R.C.P. 15(b) is interesting, especially in light of the purpose of that rule. "The requirement that the unpleaded issues be tried by at least the implied consent of the parties assures that the parties have notice of the issues before the court and an opportunity to address those issues with evidence and argument." *M. K. Transport, Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980) (trial court committed error in basing its decision on an unpleaded issue even though there did exist some evidence in the record to support it). Indeed, resolving an issue without providing notice and an opportunity to respond is a violation of due process of law. *Intermountain Gas Co. v. Idaho Public Utilities Comm'n*, 97 Idaho 113, 540 P.2d 775 (1975).

There is no indication anywhere in the record that the parties had any inkling that the court would determine whether the trustee had the right to charge its attorney fees against the trust.[1] It is clear that, under some circumstances, a trustee is entitled to reimbursement from the trust estate for the expenses of conducting a defense to an action commenced by a beneficiary of the trust. *See, e. g., Jennings v. Murdock*, 220 Kan. 182, 553 P.2d 846 (1976); Restatement of Trusts (Second) §§ 188, 244 (1959). Given the state of the record, I of course express no opinion as to the resolution of this issue. The court below, however, saw fit to do so, notwithstanding the fact that it was without the benefit of briefs, argument or evidence. For the trial court to resolve this issue without giving Walker notice and an opportunity to be heard is fundamentally unfair and a denial of due process. *Intermountain Gas Co. v. Idaho Public Utilities Comm'n. supra.*

The lower court's error was compounded by the fact that it was not the proper court to decide the issue in the first place. In

1. It is true that Rasmuson's complaint requested attorney fees for herself, but nowhere does it mention the matter of the trustee's right to charge its fees against the trust. Moreover, as the majority notes Rasmuson never filed a motion for summary judgment, and thus the record is without another piece of paper which may, if properly drafted, have notified Walker that its right to reimbursement for attorney fees was at issue.

discussing the related issue of trustee withdrawal or removal, the trial court remarked, "The defendant should simply go to the Court with jurisdiction, express the wishes of both sides, and petition for withdrawal and substitution of trustee. Then, in its final order, the district court purported to order the appellant bank to "proceed to petition the Court having jurisdiction for the defendant's withdrawal as trustee of the J. S. Hanzel Trust, and the substitution of a new trustee, all at said defendant's cost and expense at no charge to the trust." Since the district court recognized that it was not the proper court for deciding the question of removal of the trustee, it is difficult to understand how the court nevertheless felt that it could tell the court in the proper forum how to rule on particular items in the trustee's final accounting on withdrawal.

The majority also seems to recognize this, observing that the principal place of trust administration is almost certainly in Utah, and not in Idaho. Application of I.C. § 15–7–203 would indicate that a Utah court is therefore the appropriate forum for settling controversies relating to the internal affairs of the trust. The lower court should have referred the attorney fees issue, along with the trustee substitution issue, to the appropriate Utah court. Sound principles of comity require that the courts of this state refrain from trying to dictate to the courts of the State of Utah, or any other state where a trust might be administered, how that court should carry out the exercise of its jurisdiction, particularly as it relates to passing upon the appropriateness of a final accounting filed by a trustee.