89 P.3d 856

The ESTATE OF Linda SKVORAK; Roger Scott and Darien Scott, husband and wife; Roy Scott and Delores Scott, husband and wife, Plaintiffs–Counterdefendants–Respondents,

v.

SECURITY UNION TITLE INSURANCE COMPANY, Defendant–Counterplaintiff–Appellant.

No. 28717.

Supreme Court of Idaho,
Cd'A, October 2003 Term.

April 23, 2004.

Preston, Gates & Ellis, Coeur d'Alene, for appellant. Peter G. Scott argued.

Ellis, Brown and Sheils, Chtd., Boise, for respondents. Allen B. Ellis argued.

TROUT, Chief Justice.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant Security Union Title (Security Union) is the successor in interest to a mortgage held by Crown Pacific LP (Crown Pacific). Respondents Linda Skvorak (now deceased) and her brothers Roger Scott and his wife Darien, and Roy Scott and his wife Delores, (the Skvoraks), are the original owners of the property at issue.

Gerald and Patsy Sylvester (the Sylvesters) agreed to purchase from the Skvoraks a 200–acre timber property called "Gold Cup" located in Bonner County, Idaho, for $700,000, payable with a $450,000 down payment, followed by the remaining $250,000 paid in five annual installments with interest at eight and one-half percent. Attorney Nick Lamanna (Lamanna) of Cooke, Lamanna, Smith, Cogswell & Elliott, represented the Skvoraks in this transaction, which was set to close in January 1995. Esther Cox (Cox), the office manager of Lamanna's firm, received a letter from the realtor on December 28, 1994, instructing Cox to "let [Crown Pacific] know the amount of the [down payment] check."

On January 3, 1995, the Skvoraks met with Lamanna, Cox, and Gerald Sylvester's brother to execute a warranty deed and an addendum, allowing the Sylvesters to alienate a portion of Gold Cup in order to pay the purchase price balance. The Skvoraks did not deliver the deed at this meeting, as the Sylvesters could not attend the meeting due to illness. Also at this meeting, Darien Scott asked Lamanna whether the Skvoraks would get the property back if the Sylvesters defaulted. Roger Scott testified he stated that the Skvoraks would not hold a second mortgage in this transaction and Lamanna agreed with him.

Lamanna testified he remembers Darien Scott asking him about default and Lamanna testified he understood Crown Pacific intended to advance the down payment based on sale of timber from Gold Cup. Therefore, in Lamanna's experience, he believed the Skvoraks were first in line. Lamanna further asserted Linda Skvorak knew about Crown Pacific's plan to advance the down payment from his conversations with her. Cox also testified that at the January 3rd meeting, Lamanna and the Skvoraks discussed Crown Pacific's plan to advance the down payment based on an interest in the timber only.

The morning of January 13, 1995, the Sylvesters and Norm Suenkel (Suenkel), resource officer for Crown Pacific, met at Lamanna's office and executed a mortgage in favor of Crown Pacific for the down payment. Lamanna and the Skvoraks were not present at this meeting, but Cox notarized the Crown Pacific mortgage. The Sylvesters also executed a promissory note for $450,075, a log purchase agreement, and a UCC–1 financing agreement, all of which Crown Pacific prepared. Later that day, the Sylvesters returned to Lamanna's office and executed a mortgage in favor of the Skvoraks to secure payment on a promissory note for the balance, and accepted delivery of the deed. Cox also notarized this mortgage. Crown Pacific recorded its mortgage January 19, 1995. Linda Skvorak recorded the Skvoraks' mortgage and warranty deed on January 31, 1995.

Larry Isenberg (Isenberg), Crown Pacific's Manager of Land and Timber, testified that in prior transactions with the Sylvesters, Crown Pacific advanced money to purchase property with timber on it, the Sylvesters would log the land, and Crown Pacific would then take the logs. Isenberg further testified he knew the Sylvesters owed a balance on the purchase price to the Gold Cup vendors, but did not know the Sylvesters gave the Skvoraks a mortgage on Gold Cup for the balance. Suenkel also testified that the purpose of Crown Pacific's involvement was to acquire logs from the Gold Cup property. Suenkel stated in his deposition he knew of the unpaid balance the Sylvesters owed the Skvoraks and that he "must have" known about the Skvoraks' mortgage.

In 1996, the Sylvesters defaulted on the Skvoraks' promissory note. The Skvoraks filed a complaint against the Sylvesters and Crown Pacific to foreclose the mortgage and for a deficiency judgment. Crown Pacific filed its answer and cross-claims and included a third party complaint against William and Patty English (the Englishes). According to the record, the Englishes claimed an interest in the property as creditors of the Sylvesters. To settle the third party complaint, Crown Pacific and the Englishes entered into a settlement agreement. As part of the settlement agreement, Crown Pacific tendered all of its rights in Gold Cup to the Englishes and the Englishes title insurer, Security Union, for $85,000 and a fifty-fifty split of any recovery in the litigation with the Skvoraks.

The Sylvesters filed a Chapter 13 bankruptcy petition on September 27, 1997. The bankruptcy plan required the Sylvesters to list Gold Cup for sale and the Skvoraks and Crown Pacific would receive the proceeds. If either party claimed a deficiency, then they would share pro rata with the Sylvesters' general unsecured creditors. The property did not sell and on October 28, 1998, the Sylvesters' quitclaimed it through the bankruptcy to Crown Pacific and the Skvoraks as tenants in common.

In 1999, Crown Pacific received a property tax notice stating it owed taxes on the Gold Cup property. The tax notice was addressed to Crown Pacific and the Skvoraks. To avoid paying taxes, Crown Pacific executed two separate quitclaim deeds conveying Gold Cup to the Skvoraks in May and August 1999. The Skvoraks did not know about the deeds and paid nothing for the conveyances. Roger Scott paid the full amount of taxes due on Gold Cup from 1996 to date.

In April 2002, the district court held a court trial on the claims to Gold Cup between Crown Pacific's successor in interest, Security Union, and the Skvoraks. First, the district court considered the effect of the bankruptcy on the mortgages and concluded the Sylvesters' bankruptcy did not extinguish either party's mortgage. Next, the district court considered the effect on the Crown Pacific mortgage of the quitclaim deeds from Crown Pacific to the Skvoraks. The district court found the deeds did not extinguish Crown Pacific's mortgage because the Skvoraks did not give consideration and Crown Pacific never intended the quitclaim deeds to discharge the mortgage.

The district court next considered the issue of priority between the Skvoraks mortgage and the Crown Pacific mortgage. The trial court classified both mortgages as purchase money mortgages and concluded that Crown Pacific and the Skvoraks each had notice of the other party's mortgage prior to recording. These findings left the trial court with "a case of first impression in Idaho"; that is, the priority between two purchase money mortgages executed in the same transaction. Ultimately, the trial court looked to the *Restatement (Third) of Property § 7.2(c)* and determined that the Skvoraks' mortgage took priority over Crown Pacific's mortgage because the Skvoraks were the vendors of the mortgaged property. Security Union appealed.

## II.

### *STANDARD OF REVIEW*

On appeal, this Court will not set aside findings of fact unless they are clearly erroneous. I.R.C.P 52(a). Appellate review of the decision of the trial court is limited to ascertaining whether substantial, competent evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Crea v. Crea*, 135 Idaho 246, 16 P.3d 922 (2000); *Baxter v. Craney*, 135 Idaho 166, 16 P.3d 263 (2000). When an action is tried to a court without a jury, determinations as to the credibility of witnesses, the weight to be given their testimony, its probative effect and inferences and conclusions to be drawn there from, are all matters within the province of the trial court. *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 9 P.3d 1204 (2000). The trial court's findings of fact will be liberally construed in favor of the judgment entered. *Beard v. George*, 135 Idaho 685, 23 P.3d 147 (2001). This Court exercises free review over conclusions of law. *Smith v. J.B. Par-*

*son Co.,* 127 Idaho 937, 941, 908 P.2d 1244, 1248 (1996).

## III.

### *DISCUSSION*

**A.  The quitclaim deeds did not extinguish Crown Pacific's mortgage.**

■ The Skvoraks argued before the trial court that the Sylvesters' bankruptcy proceeding discharged Crown Pacific's mortgage. However, in the bankruptcy order dated August 7, 2000, the bankruptcy court specifically stated that "creditors shall retain their lien against the real property and in the proceeds should the property be sold, in a priority to be agreed upon by the creditors, or later determined in a judicial forum." We agree with the district court's determination that the language in the bankruptcy order clearly provides Crown Pacific's mortgage was unaffected by the bankruptcy.

■ In addition, there is the question of the effect of the Sylvesters' quitclaim deed to Crown Pacific because at that point Crown Pacific would, in theory, possess both the legal and equitable title to the property as a tenant in common with the Skvoraks. To determine whether the quitclaim deed extinguished Crown Pacific's mortgage, *Barton v. Cannon,* 94 Idaho 422, 489 P.2d 1021 (1971) is instructive. Under *Barton,*

"In the absence of an expression of intention on the part of the mortgagee at the time he acquires the interest of the mortgagor in the mortgaged property, the general rule is that the mortgage is not merged if it is in the interest of the mortgagee ... In such case, it must be presumed that the mortgagee intended to do that which was most advantageous to himself, and if this is that the two estates shall not merge, no merger will take place. This presumption, however, is not conclusive; it may be rebutted by evidence that would warrant a jury in finding that a merger had been expressly agreed to, or that the mortgagee's conduct and action

were such as could fairly be ascribed only to an intention to merge."

94 Idaho at 423, 489 P.2d at 1023.

Under the general rule of *Barton,* there is a presumption that Crown Pacific's mortgage did not merge because merger would extinguish the mortgage and such a result would not be in Crown Pacific's interest. Also, Crown Pacific never expressed an intent or agreement for the conveyance in bankruptcy to extinguish its mortgage.

■ An issue was also raised about the impact of the quitclaim deeds from Crown Pacific to the Skvoraks and whether they conveyed all of Crown Pacific's interest in the real property, including its mortgage interest. The trial court looked to cases where the mortgagor deeded the property to the mortgagee. In the cases of *Westheimer v. Thompson,* 3 Idaho 560, 32 P. 205 (1893), *Barton,* 94 Idaho 422, 489 P.2d 1021, and *Toston v. Utah Mortgage Loan Corporation,* 115 F.2d 560 (9th Cir.1940), the transfer from mortgagor to mortgagee did not extinguish the mortgage unless the mortgagee intended, either expressly or impliedly, that the transfer extinguish the mortgage. In applying this rule to this case by analogy, the district court determined that Crown Pacific received no consideration for the transfer, the Skvoraks did not know of the transfer, and Crown Pacific only intended to avoid paying taxes. Therefore, Crown Pacific did not intend that the quitclaim deeds extinguish its mortgage.

■ We agree with the district court that the transfer did not extinguish Crown Pacific's mortgage for the reasons given by the district court and also because the deeds were never delivered. Recordation of a deed creates a rebuttable presumption of delivery. *Hartley v. Stibor,* 96 Idaho 157, 525 P.2d 352; *Hiddleson v. Cahoon,* 37 Idaho 142, 214 P. 1042 (1923); *Idaho Trust Co. v. Eastman,* 43 Idaho 142, 249 P. 890 (1926). In this case, Crown Pacific recorded the deeds and therefore, under *Hartley,* the deeds are presumed delivered. However, in this case the presumption of delivery is clearly rebutted because there was no mutual assent of the parties.

■ According to *Bowers v. Cottrell,* 15 Idaho 221, 228–29, 96 P. 936 (1908), "delivery

includes surrender and acceptance, and both are necessary to its completion." Also, "delivery must be the result of a contract, the meeting of two minds, the accord of two wills. The grantor must be willing and agree to deliver, and the grantee must be willing and consent to receive." *Id.* Further, "it is essential to the delivery of a deed that there be a giving of the deed by grantor and a receiving of the deed by the grantee, with a mutual intent to pass title from the one to the other." *Crenshaw v. Crenshaw,* 68 Idaho 470, 475, 199 P.2d 264, 267 (1948). "The mere placing of a deed in the hands of the grantee does not necessarily constitute a delivery. The question is one of intention: whether the deed was then intended by the parties to take effect according to its terms." *Id.* In *Flynn v. Flynn,* 17 Idaho 147, 160, 104 P. 1030, 1034, this Court said: "It is held that the real test of the delivery of a deed is this: Did the grantor by his acts or words, or both, intend to divest himself of title? If so, the deed is delivered."

From these holdings it appears there cannot be a unilateral transfer of interest in real estate without delivery and delivery requires the mutual assent of the parties. Furthermore, under *Flynn,* the grantor's intention as to what is conveyed and when delivery occurs controls. In this case, Crown Pacific did not deliver the quitclaim deeds to the Skvoraks because Crown Pacific never evidenced any intent to deliver the quitclaim deeds, but simply executed and recorded them. Also, according to Crown Pacific, it did not intend to divest itself of any title that would extinguish its mortgage and was simply seeking to avoid the payment of property taxes. Consequently, the quitclaim deeds from Crown Pacific to the Skvoraks did not extinguish Crown Pacific's mortgage, and this Court affirms the decision of the trial court.

**B.  Crown Pacific's third party purchase money mortgage for the amount of the down payment takes priority over the Skvoraks' vendor purchase money mortgage for the balance of the purchase price because Crown Pacific recorded its mortgage first.**

Security Union and the Skvoraks identify numerous issues on appeal, but there is one overriding issue: whether the Skvoraks' vendor purchase money mortgage takes priority over the Crown Pacific third party purchase money mortgage.

*1.  Both Crown Pacific and the Skvoraks have purchase money mortgages.*

Both mortgages are clearly purchase money mortgages. Idaho Code § 45–112, defines a purchase money mortgage as "a mortgage given for the price of real property, at the time of conveyance." In this case, Crown Pacific and the Skvoraks each received a mortgage for a portion of the price of Gold Cup and received the mortgage at the time of conveyance. Each party would have this Court find that the mortgages were created in separate transactions, however, we agree with the district court's finding that the deed and both mortgages were part of one continuous transaction involving the purchase of Gold Cup. Also, a mortgage attaches at the time of execution and exists whether or not the mortgage is recorded, and the controlling test is whether the grantor sustains the relation of debtor to grantee after execution of the instrument. *Clinton v. Utah Constr. Co.,* 40 Idaho 659, 682, 237 P. 427, 435 (1925); *Hawe v. Hawe,* 89 Idaho 367, 374, 406 P.2d 106, 109 (1965). Thus, both parties possessed purchase money mortgages.

*2.  The Skvoraks had notice of the Crown Pacific mortgage and therefore the Skvoraks are not good faith purchasers.*

The district court concluded that each party knew or had constructive notice of the other party's mortgage, and therefore neither party was a good faith purchaser. In Idaho, "one who purchases or encumbrances with notice of inconsistent claims does not take in good faith." *Langroise v. Becker,* 96 Idaho 218, 220, 526 P.2d 178, 180 (1974). Good faith means a party purchased the property without knowing or having notice ... of any adverse claims to the property. *Sun Valley Hot Springs Ranch, Inc. v. Kel-*

*sey,* 131 Idaho 657, 962 P.2d 1041 (1998). Whether Crown Pacific is a good faith purchase in this case is irrelevant because Crown Pacific was the initial encumbrancer. Therefore, these rules do not apply to Crown Pacific and to that extent the district court erred.

■ However, these rules do apply to the Skvoraks and they argue they did not have notice of the Crown Pacific mortgage. However, according to the testimony of Lamanna and Cox, the Skvoraks discussed Crown Pacific's plans to advance the down payment based on an interest in the timber at the January 3, 1995 meeting. In addition, Lamanna testified that Linda Skvorak knew Crown Pacific intended to advance the down payment. Finally, the Skvoraks alienated part of Gold Cup in an addendum to the warranty deed for the specific purpose of allowing the Sylvesters to raise money for the down payment. The district court found this sufficient evidence the Skvoraks knew of the Crown Pacific mortgage interest and did not take as a good faith purchaser. This finding is not clearly erroneous and, therefore, we affirm the district court.

*3. The Crown Pacific mortgage takes priority over the Skvoraks' mortgage because Crown Pacific recorded first.*

■ The question then presented is the priority between a vendor purchase money mortgage and a third party purchase money mortgage, where the vendor has notice of the third party's mortgage and it was recorded first.

The district court resolved the issue of priority by looking to the *Restatement (Third) of Property § 7.2,* which provides:

(c) A purchase money mortgage given to a vendor of real estate, in the absence of a contrary intent of the parties to it and subject to the operation of the recording acts, has priority over a purchase money mortgage on that real estate given to a person who is not a vendor.

Comment (d) further explains that between vendor and third party purchase money mortgages, "if both lenders have notice of the other's mortgage, the vendor's mortgage

will be superior to its third party counterpart." Relying on these provisions, the district court concluded the Skvoraks' mortgage took priority over the Crown Pacific mortgage because the Skvoraks were the vendors and there is no evidence of the contrary intent of the parties.

■ The *Restatement* is not law unless it has been adopted by this Court. *See Ambrose v. Buhl Joint School Dist. No. 412,* 126 Idaho 581, 586, 887 P.2d 1088, 1093 (Ct. App.1994); *Boise Car & Truck Rental Co. v. Waco, Inc.,* 108 Idaho 780, 785, 702 P.2d 818, 821 (1985)("[w]e are cited to no authority wherein Idaho, or for that matter any other jurisdiction in the country, has specifically adopted said section of the *Restatement* "). This Court will not adopt a Restatement provision if it is inconsistent with Idaho precedent, a different formulation resolved the issue, or the issue can be resolved by current Idaho law. *See Dennett v. Kuenzli,* 130 Idaho 21, 28, 936 P.2d 219, 226 (Ct.App.1997), *Idaho Bank & Trust, v. First Bancorp,* 115 Idaho 1082, 1084, 772 P.2d 720, 722 (1989). In this case, we decline to adopt the *Restatement (Third) of Property § 7.2* because Idaho's recording statutes resolve the issue of priority.

Idaho Code § 45–112 states that a "mortgage given for the price of real property, at the time of conveyance, has priority over all other liens created against the purchaser, subject to the operation of the recording laws." Idaho recording law provides that "every conveyance of real property ... recorded as prescribed by law, from the time it is filed with the recorder for record, is constructive notice of the contents thereof to subsequent purchasers and mortgages." I.C. § 55–811. Additionally, § 55–812 provides every conveyance is void as against any subsequent mortgagee of the same property who takes for value and in good faith and whose mortgage is first duly recorded. *See Sun Valley Land and Minerals, Inc. v. Burt,* 123 Idaho 862, 866, 853 P.2d 607, 611 (Ct.App. 1993). Finally, § 55–606 states every mortgage is conclusive against everyone subsequently claiming under the grantor, except a good faith encumbrancer who gives value and records first.

According to Idaho's recording statutes, a mortgage recorded first in time has priority against all other subsequent mortgagees. As discussed above, Crown Pacific executed and recorded its mortgage first (twelve days before the Skvoraks) and the Skvoraks were not good faith purchasers because they knew of the Crown Pacific mortgage. Because the Skvoraks did not record first and had at least constructive notice of the Crown Pacific mortgage, Crown Pacific's mortgage takes priority. We reverse the decision of the district court and find Crown Pacific's mortgage has priority.

## IV.

### *CONCLUSION*

In summary, this Court affirms the district court's finding that the Sylvesters' quitclaim deed to Crown Pacific did not extinguish Crown Pacific's mortgage because Crown Pacific's intention controls and Crown Pacific never intended such a result. In addition, this Court affirms the district court's finding that the quitclaim deeds from Crown Pacific to the Skvoraks did not extinguish Crown Pacific's mortgage because, again, there was no intent to do so, nor was there delivery of the deeds.

This Court also affirms the district court's determination that Crown Pacific and the Skvoraks both obtained purchase money mortgages and that Skvoraks were aware of Crown Pacific's interest. Under Idaho's recording statutes a purchase money mortgage recorded first in time has priority over a subsequent vendor purchase money mortgage. Therefore, Crown Pacific's mortgage takes priority over the Skvoraks' mortgage and the order of the district court is reversed. We award costs on appeal to Security Union.

Justices SCHROEDER, KIDWELL, EISMANN, and BURDICK concur.