644 P.2d 283

Alvin McCOLLUM and Maxine McCollum, husband and wife; and Emmanuel Singer and Deborah Singer, husband and wife, Plaintiffs-Appellants,

v.

INSURANCE COMPANY OF NORTH AMERICA, a foreign corporation, Defendant-Appellee.

No. 1 CA–CIV 5235.

Court of Appeals of Arizona, Division 1, Department B.

March 25, 1982.

Treon, Warnicke & Roush, P.A. by B. Michael Dann, Charles D. Roush, Linda K. Scott, Phoenix, for plaintiffs-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Calvin L. Raup, Richard J. Woods, Phoenix, for defendant-appellee.

## OPINION

OGG, Judge.

The sole issue raised in this appeal is whether a general liability insurance policy issued by appellee, Insurance Company of North America (INA) to appellants, Alvin McCollum and wife and Emmanuel Singer and wife (Insureds), provides insurance coverage in a tort damage action brought against the insureds for loss of profits in certain land transactions.

In an underlying tort action filed against the insureds and others, it was claimed that Alvin McCollum and Emmanuel Singer, while employed by Consolidated Mortgage Corporation, made negligent representations to buyers of unimproved lots, which negligence caused diminution of the value to the lots. This complaint alleged that the insureds, in violation of their representations, failed to improve the property through the installation of roads, utilities, and recreational, medical and shopping facilities. The complaint further alleged that because of the failure to make the agreed improvements, the land never appreciated and no profits were ever realized by the lot buyers.

The insureds in turn filed their complaint against INA seeking a declaratory judgment with a finding that the INA general liability insurance policy provided coverage for the tort damage action and that INA had a duty to defend such action.

INA answered the insureds' complaint, denying any coverage under the insurance policy, and counterclaimed against its insureds, seeking a court determination that the INA insurance policy afforded no coverage to the tort claim and that INA owed no duty to defend such a claim.

Both parties filed motions for summary judgment, and the trial court granted INA's motion, expressly agreeing with INA's argument that the damages sought in the underlying tort action did not fall within the coverage of the policy. The insureds then filed this appeal. We affirm.

The insureds claim they are entitled to coverage and to have all such claims against them defended by INA. They rely on the liability portion of the policy, "Coverage E", as affording protection against "Liability for Personal Injury and Property Damage", in accordance with the following Insuring Agreement (Paragraph 1):

*This Company agrees with the named Insured to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of* personal injury, including death at any time resulting therefrom, sustained by any person or *injury to or destruction of tangible property, including the loss of use thereof, caused by an occurrence, as defined herein,* and arising out of the ownership, maintenance or use of the premises designated on Page 1 for the purpose specified thereon, and all operations necessary or incidental thereto. (emphasis added)

Paragraph 2(A) of Coverage E provides that INA will "[d]efend any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent ...." Paragraph 5 of B—Definitions defines "Occurrence" as follows:

The word *"occurrence"* as used in this section *shall mean either an accident happening during the coverage period or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes personal injury or injury to or destruction of tangible property*

*during the coverage period.* All injury or damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence. (emphasis added)

The insureds argue that the allegations of negligent misrepresentations, coupled with the allegations of injuries suffered as a result thereof, come within the policy language covering "injury to or destruction of tangible property, including the loss of use thereof." INA argues that the loss of anticipated profits does not constitute injury to or destruction of tangible property, and therefore there is no coverage afforded to the insureds.

We agree with the position of INA that under the terms of the specific insurance policy under consideration there can be no coverage without an "occurrence" resulting in physical damage to property. The INA policy defines an "occurrence" as "an accident happening during the coverage period or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes personal injury or injury to or destruction of tangible property during the coverage period." The record is devoid of any suggestion that an accident occurred which resulted in physical damage to the property. The plain fact is that there was no "occurrence" at all; nothing happened, including the promised appreciation in the land value.

The insureds, in furtherance of their claim for insurance coverage, rely upon a series of cases involving damages to agricultural land or to the crops grown thereon when a defective or improper seed or the wrong fertilizer was sold which resulted in a diminished crop yield. *St. Paul Fire and Marine Insurance Company v. Northern Grain Company*, 365 F.2d 361 (8th Cir. 1966) (where the court held there was insurance coverage for a diminution in value of a wheat crop where insured sold wrong wheat seed). In *Wells Labberton v. General Casualty Company of America*, 53 Wash.2d 180, 332 P.2d 250 (1958), the court found that the insured, a supplier of defective fertilizer, had caused a damage to property when

crops would not grow and the plaintiff farmer was unable to plant for a year. The court found that there was physical property damage and that an insurance policy covering "injury to or destruction of property" would afford coverage.

The insureds also rely on a line of cases involving damages to buildings caused by the installation of a defective product. These cases hold that physical damage to a building during its construction falls within the definition of an insurance policy covering "injury to or destruction of property." *Bundy Tubing Company v. Royal Indemnity Company*, 298 F.2d 151 (6th Cir. 1962); *Geddes & Smith, Inc. v. Saint Paul—Mercury Indemnity Co.*, 51 Cal.2d 558, 334 P.2d 881 (1959) (*Geddes & Smith I*); *Geddes & Smith, Inc. v. Saint Paul—Mercury Indemnity Company*, 63 Cal.2d 602, 47 Cal.Rptr. 564, 407 P.2d 868 (1965) (*Geddes & Smith II*).

These cases relied upon by the insureds require that there must be some actual physical damage to the land or its improvements before coverage is found under a comprehensive general liability policy. We find no evidence in the case under consideration that there was any actual physical damage to the land, and therefore we do not find these cases to be persuasive. We also note that these cases relied upon by the insureds were considering policies broader than the policy in question, which limits coverage to injury or destruction of "tangible" property.

Insureds also rely upon *Safeco Insurance Company v. Munroe*, 165 Mont. 185, 527 P.2d 64 (1974), where the court found that a physical injury had occurred to the land and that there could be a recovery for lost profits under a growers and ranchers policy. In *Safeco*, the plaintiff farmer sued the insured for selling the wrong type of seed wheat. The court found coverage as a damage to "tangible" property. We distinguish *Safeco* from this appeal by reason of the fact that in *Safeco*, the court found a direct physical injury to the land, while here we have only a claim for the loss of anticipated land profits.

INA argues that all of the pertinent cases dealing with this issue find there is no coverage for a claim of lost profits where no physical property damage has been established. *Hartford Accident & Indemnity Company v. Case Foundation Company*, 10 Ill.App.3d 115, 294 N.E.2d 7 (1973), involved an investor who sued to recover his investment and anticipated profits because of delays in the development of commercial real estate. The pertinent policy language was similar to the INA policy. The court found there had been no physical damage to the real estate and therefore, consequential damages were not recoverable. In holding that the policy did not extend to the loss of anticipated profits, the court stated:

> Investments, anticipated profits and financial interests in business ventures are intangibles; they are not property as that word is used in Coverage D of Hartford's liability policy. Wolman's complaint that alleged injury to his investments and anticipated profits did not allege facts that stated a case within or potentially within the coverage of the policy.

294 N.E.2d at 13–14.

*General Insurance Company of America v. Western American Development Company, Inc.*, 43 Or.App. 671, 603 P.2d 1245 (1979), is a case with facts similar to this appeal. The purchasers of mobile home lots sued the insured seller, claiming his misrepresentations of certain easement rights adjacent to the Willamette River had diminished the value of the lots. The court found there was no coverage because the loss of the investments and anticipated profits was not within the policy coverage for property damage or loss of use of tangible property. *See also, Stone & Webster Engineering Corp. v. American Motorist Insurance Co.*, 458 F.Supp. 792 (E.D.Va.1978); *Fresno Economy Import Used Cars, Inc. v. United States Fidelity & Guaranty Company, Inc.*, 76 Cal.App.3d 272, 142 Cal.Rptr. 681 (1978); *Temco Metal Products Company v. St. Paul Fire & Marine Insurance Co.*, 273 Or. 716, 543 P.2d 1 (1975); *American States Insurance Company v. Hurd Bros., Inc.*, 8 Wash. App. 867, 509 P.2d 1015 (1973).

From our analysis of the policy terms and from our study of the case law, it is our opinion that the INA policy did not cover the intangible losses of future profits on land purchases. The loss of speculative profit as a result of the negligent representations of the insureds is not a loss insured against in the INA general liability policy. There was no "occurrence" or "injury to or destruction of tangible property" as is required before coverage is provided under the plain, unambiguous terms of the policy. Courts will not indulge in a forced construction of an insurance policy so as to fasten a liability on the insurance company which it has not contracted to assume. *St. Paul Fire and Marine Insurance Company v. Coss*, 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (1978).

The judgment of the trial court is affirmed.

HAIRE, A. P. J., and RICHARD M. DAVIS, J. pro tem., concur.

NOTE: The Honorable RICHARD M. DAVIS, a Judge Pro Tempore of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 20.