680 P.2d 1255

**TRAVELERS INDEMNITY COMPANY, Plaintiff, Counter-defendant, Appellee,**

v.

**STATE of Arizona, Defendant, Counter-claimant, Appellant.**

**No. 1 CA–CIV 6120.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 28, 1984.

Weyl, Guyer, Macban & Olson by Thomas G. Bakker, Phoenix, for plaintiff, counter-defendant, appellee.

Robert K. Corbin, Atty. Gen. by Mark N. Weingart, Asst. Atty. Gen., Phoenix, for defendant, counter-claimant, appellant.

## OPINION

EUBANK, Judge.

The issue presented by this appeal is whether the trial court erred by granting summary judgment to the appellee insurance company on the basis that there was no coverage under a liability insurance policy. We find no error and affirm.

This action originates from the financial collapse of Lincoln Thrift Association and U.S. Thrift Association. The investors in these associations filed a class action suit against the State of Arizona for the latter's alleged failure to properly regulate and supervise the associations as required by law. The state sought to have its insurer provide a defense under the terms of a public liability policy issued to it by appellee Travelers Indemnity Company (Travelers). Travelers refused to defend, on the basis of no coverage, and filed a declaratory judgment action against the state seeking a declaration of the extent of coverage and of Travelers' duty to defend and pay any liability in the class action suit. The state answered and filed a third party complaint joining several other insurers in the declaratory judgment action. Two of these third party defendants, who are not parties to this appeal, moved for and were granted summary judgment on the basis that their policies covered periods prior to the occurrence resulting in loss to the investors. This disposition was affirmed on appeal by this court in *State v. Glens Falls Ins. Co.*, 125 Ariz. 328, 609 P.2d 598 (App.1980).

Thereafter, Travelers filed a motion for summary judgment on the basis that there was no coverage under its policy because the character of damages sustained by the investors did not constitute tangible property damage as required by the policy. The motion was granted, and the state's cross-motion for summary judgment was denied. The state has timely appealed.

The relevant portions of the insurance contract between the parties are as follows:

I. Coverage A—Bodily Injury Liability
Coverage B—Property Damage Liability

The company will pay on behalf of the *insured* all sums which the *insured* shall be legally obligated to pay as damages because of

Coverage A: Bodily Injury or
Coverage B: Property Damage

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements. (Emphasis in original).

The definitional section of the policy defines property damage as follows:

"Property Damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period. (Emphasis in original).

The state argues that the depositors suffered a loss of money, that money is tangible personal property, and that therefore the depositors' suit was for loss of tangible personal property. The state maintains that either the entitlement is clear under the language of the policy or that the language is ambiguous and must be interpreted against Travelers.

■ Travelers argues that the depositors made an investment with the associations. The investment was not a bailment of money or valuables, but rather became a chose in action. Travelers maintains that a chose in action is intangible property, and that therefore the investors did not lose tangi-

ble property within the coverage of the policy. We agree with Travelers' analysis.

■■■ The investors' lost property is clearly a chose in action. Repealed A.R.S. § 44-2041 (Laws 1976, Ch. 114, § 2, eff. June 24, 1976) defined investment certificates as "the choses in action issued by a thrift company ... which choses in action do not represent ownership in and are not secured by the issuer." Also, investment in the associations was analagous to a deposit of funds in a bank. The deposit of funds creates a debtor-creditor relationship between the bank and the depositor. *E.g., Valley Nat. Bank v. Electrical District No. 4, Pinal County,* 90 Ariz. 306, 367 P.2d 655 (1961). A credit is a chose in action, *e.g., Eric v. Walsh,* 135 Conn. 85, 61 A.2d 1 (1948), and a chose in action is intangible property. 73 C.J.S. *Property* § 22 at 199 (1983).

We find the state's argument, that the investors' property is tangible because it is represented by an investment certificate, to be specious. There is neither injury to, nor destruction of, the investment certificate. Further, there is neither injury to, nor destruction of, the actual money invested. There is only the loss of the investment.

The general rule is that loss of investment is not injury to or destruction of tangible property. *E.g., Hartford Accident & Indemnity Co. v. Case Foundation Co.,* 10 Ill.App.3d 115, 294 N.E.2d 7, 92 A.L.R.3d 513 (1973). We note that courts have found coverage of consequential damages, including loss of profits, but only where there is a direct physical injury to tangible property, followed by the consequential damages. *See Safeco Insurance Co. v. Munroe,* 165 Mont. 185, 527 P.2d 64 (1974).

In *McCollum v. Insurance Co. of North America,* 132 Ariz. 129, 644 P.2d 283 (App. 1982), this court considered similar facts and legal issues. There the insureds had sold unimproved lots to several buyers. The buyers later sued the insureds on the grounds that they had never made improvements that they had said they would make, and that therefore the buyers never realized the profits which they had expected. The insureds then filed a declaratory judgment action against INA to determine INA's duty to defend and the extent of coverage. Although the liability policy at issue there was not identical with the one *sub judice,* it did contain the same coverage clause for "injury to or destruction of tangible property." INA argued that the loss of anticipated profits did not constitute "injury to or destruction of tangible property." The court concluded that "it is our opinion that the INA policy did not cover the *intangible losses* of future profits on land purchases." (Emphasis supplied). 132 Ariz. at 132, 644 P.2d at 286.

The case *sub judice* is not distinguishable in any significant respect. The claim here is for loss of both the investment and the expected profit thereon, whereas in *McCollum,* the investors did not lose the investment (the land), but only the expected profit. However, in both instances, the expected profit was intangible property.

A case very close on its facts is *Giddings v. Industrial Indemnity Co.,* 112 Cal. App.3d 213, 169 Cal.Rptr. 278 (1980). In that case, three groups of plaintiffs sued two brothers who were involved in a bankrupt financial empire which had included Westgate California Corporation and United States National Bank (USNB). In one suit, the shareholders of USNB sought the value of their holdings; in the second, a bank sought recovery for funds paid for capital notes of USNB; in the third, trustees of Westgate sued for alleged "looting" of the corporation by defendants. The defendants sought defense and coverage from two insurers. One of the insurers' policies defined property damage as "physical injury to or destruction of tangible property." Another defined property damage as "loss of or direct damage to or destruction of tangible property." After the insurers declined their tenders of defense, defendants then sued the insurers for their wrongful failure to defend. The court saw the key issue as whether or not the original plaintiffs had sought to recover for property damages covered by the

policies, i.e., whether the damages were to tangible or to intangible property. The court stated:

Here the policies contain three different definitions of "property damage," but the policy provisions have one crucial element in common: liability for "property damage" is covered only if some destruction of or injury to or loss of use of *tangible property* has occurred. Understood in its plain and ordinary sense, "tangible property" means "property (as real estate) having physical substance apparent to the senses" (Webster's Third New International Dictionary (1968) p. 2337). To construe the explicit words "tangible property" to include intangible economic interests and property rights requires a strained and farfetched interpretation, doing violence to the plain language of the policies. Such an interpretation would rewrite the policies to fasten on the insurers a liability they have not assumed. (Emphasis in original).

The court further stated:

*Moreover, strictly economic losses like lost profits*, loss of goodwill, loss of the anticipated benefit of a bargain, *and loss of an investment, do not constitute damage or injury to tangible property covered by a comprehensive general liability policy* .... (Citations omitted; emphasis added).

112 Cal.App.3d at 218–219, 169 Cal.Rptr. at 281. The court concluded that because none of the original plaintiffs had sought damages from the insured for tangible losses specified in the insurance policies, the insurers had no duty to defend.

Another relevant case is *Temco Metal Products Co. v. St. Paul Fire & Marine Insurance*, 273 Or. 716, 543 P.2d 1 (1975). There the insured's checks and "protectograph" were stolen. The thieves used the stolen items to forge checks which were cashed by a third party. The third party sued the insured to recover the amounts paid on the checks on the grounds that the insured had been negligent in safeguarding its checks and machine. The insured successfully defended the action, and then sued the insurer for the legal costs of the defense.

The policy defined property damage as "injury to or destruction of tangible property." The insured argued that the third party's suit was based on such property damage. The court disagreed:

Plaintiff cites no cases which hold that such payment constitutes injury to or destruction of tangible property as contemplated by a standard liability policy. It cites only cases which hold that money has been held to constitute tangible property. We assume that money, in certain contexts, can be considered tangible property, and that it is capable of being destroyed. However, we do not believe that paying money out on forged checks constitutes injury to or destruction of it as contemplated by the parties to the policy in question.

273 Or. at 717–18, 543 P.2d at 2. Similarly, we believe that the investing of money in an enterprise which goes bankrupt does not constitute injury to, nor destruction of, the money as contemplated by the parties to the insurance contract *sub judice*.

The courts shall not indulge in a forced construction of an insurance policy to fasten liability upon an insurer which it has not contracted to assume. *McCollum, supra*, 132 Ariz. at 132, 644 P.2d at 286. If an insurance contract provision is not ambiguous, this court must construe it according to its plain and ordinary meaning. *Almagro v. Allstate Ins. Co.*, 129 Ariz. 163, 629 P.2d 999 (App.1981). We find that the term "tangible property" is not ambiguous, and clearly excludes choses in action, such as the investments in the thrift companies. Therefore Travelers had no duty to defend and the trial court correctly granted it summary judgment.

For the foregoing reasons, the judgment is affirmed.

GRANT, P.J., and HAIRE, J., concur.