804 P.2d 900

BLACK CANYON RACQUETBALL CLUB, INC., an Idaho Corporation; and Russell D. Campbell, individually, Plaintiff–Appellants,

v.

IDAHO FIRST NATIONAL BANK, N.A., Defendant–Counterclaimant–Respondent,

and

Russell D. Campbell, Counterdefendant–Appellant.

No. 17129.

Supreme Court of Idaho, Boise, September 1990 Term.

Jan. 9, 1991.

Elam, Burke & Boyd, Boise, for appellants. Bobbi K. Dominick argued.

Holland & Hart, Langroise, Sullivan, Boise, for respondent. Steven B. Anderson argued.

BAKES, Chief Justice.

Plaintiff filed a complaint alleging that Idaho First National Bank (Idaho First) made an oral agreement to loan Black Canyon Racquetball Club, Inc., (Black Canyon) $174,000 in order to expand and remodel the club. Specifically, in its complaint Black Canyon alleges that on October 22, 1981, Idaho First loan officer Karen Kreps and Dale Bartles, a branch manager, orally agreed that once the club had obtained 150 members Idaho First would loan Black Canyon the principal sum of $174,000 at an interest rate of 13.75% to be repaid in equal monthly payments over a twelve year period. Idaho First denied entering into any binding and enforceable contract with Black Canyon, alleging that the discussions were too indefinite and lacked essential terms. The loan which Idaho First was allegedly committed to make was to be a Small Business Administration (SBA) guaranteed loan. The Emmett branch of Idaho First did submit two written applications for SBA loans on behalf of Black Canyon, which were signed by plaintiff Russell D. Campbell, the director and managing agent of Black Canyon. Both applications were declined. Idaho First declined to make a loan to Black Canyon, and this lawsuit ensued.

In its original complaint, filed on September 4, 1985, Black Canyon alleged various contractual claims stemming from the alleged oral agreement by Idaho First to make a loan to Black Canyon. Idaho First filed an answer and counterclaim on November 26, 1985. On June 5, 1987, one and one-half years later, Idaho First moved for summary judgment. Immediately thereafter, on June 11, 1987, Black Canyon moved to amend its complaint to include, for the first time, tort claims including a "tort of bad faith," "negligent failure to disclose," and "negligent infliction of emotional distress," as well as breach of fiduciary duty. On July 24, 1987, the district court denied Black Canyon's motion to amend its complaint to include these addi-

tional theories stating that the allegations were "barred by the applicable statute(s) of limitations."

On August 12, 1987, the district court granted Idaho First's summary judgment motion on the amended contract claims, stating that "the alleged oral contract lacked complete and definite terms and accordingly was unenforceable...." The district court explained its ruling as follows:

a. The terms of the alleged contracts are too indefinite to constitute a legally enforceable and binding contract.

b. Where a prospective borrower is seeking to have a lender make a SBA-guaranteed loan, as in the present case, the terms of an oral contract to loan money are not definite and certain so as to constitute a legally enforceable contract *until the SBA has committed to participate in any such proposed loan.* (Emphasis added.)

On appeal Black Canyon raises three issues: (1) whether the trial court erroneously granted Idaho First's motion for summary judgment on its contract claims; (2) whether the trial court erroneously denied Black Canyon's motion to amend its complaint to add tort causes of action; and (3) whether Idaho First was estopped to deny the existence of the alleged oral contract. We affirm the trial court, focusing our attention on the contract issue first.

I

█ Black Canyon alleges that Idaho First entered into an enforceable oral contract to provide Black Canyon with a loan. In its memorandum in support of summary judgment, Idaho First denied the existence of the enforceable oral contract, asserting among other things that "no enforceable agreement existed between Black Canyon and the Bank because essential terms were indefinite." The district court agreed, holding that the "terms of the alleged contract are too indefinite and uncertain to constitute a legally enforceable and binding contract." The district court also held that the terms of an oral contract to make an SBA-guaranteed loan "are not definite and

certain so as to constitute a legally enforceable contract until the SBA has committed to participate in any such proposed loan."

In so ruling, the district court did not err. In *Giacobbi Square v. Pek Corporation,* 105 Idaho 346, 670 P.2d 51 (1983), we reaffirmed the well-established rule that the terms of a contract must be sufficiently definite and certain in order to be enforceable. *See also Barnes v. Huck,* 97 Idaho 173, 540 P.2d 1352 (1975) and *Dales Service Company, Inc. v. Jones,* 96 Idaho 662, 534 P.2d 1102 (1975). Applying this rule to the facts of this case, we conclude that the terms of the alleged contract are too indefinite to be legally enforceable.

Appellants' argument that the terms of the alleged contract are sufficiently definite is contradicted by Russell Campbell's own testimony. In his deposition, Campbell first testified that the loan was to be for $174,000 at 13.75 percent interest, to be repaid over a twelve-year period, and that the bank would make the loan when Black Canyon had sold 150 memberships. However, Mr. Campbell later testified that the amount of the loan may have changed after the original agreement was made, although he was not entirely sure. Black Canyon Racquetball Club offered several types of memberships. Mr. Campbell testified that when the racquetball club opened, only full-single, full-family and lifetime memberships were offered, but later weight-only, fitness-only, racquetball-only, corporate, and student memberships were added. Each of these limited memberships could be for a single person, a couple, or a family, and each type of membership cost a different amount. While Mr. Campbell acknowledged that he believed the bank had made a distinction between the types of memberships that would have counted toward the 150 membership requirement, he did not know what that distinction was. Regarding the interest rate, he stated that it "may have varied from time to time," depending on when the loan was made. His deposition testimony was as follows:

Q. So in October of 1981, the bank did not commit to any particular interest rate?

A. Well, I would say market rate. And at that time, it was 13.75.

Q. They committed to market rate, whatever that was, at any time in the future when the loan finally was made.

A. Yeah, I think that's it.

Q. Was it market rate—what kind of market rate? Prime rate?

A. I don't think they ever decided that. I guess that was just the rate at that time.

Q. When you say market rate, that can mean a lot of different kinds of interest.

A. Well, mortgage rate.

Q. Mortgage rate?

A. Yeah, because it was going to be on the building anyway, building equipment. I assumed that's what it was because otherwise they wouldn't have had the security of the building to back it up.

Q. When you say you assume, that's your assumption and not necessarily the bank's.

A. Yes.

Finally, Campbell specifically acknowledged that the Small Business Administration (SBA) would have to approve his application before any loan would be made. In his deposition, Campbell testified that:

Q. How was the Small Business Administration going to be involved in that loan?

A. I assumed they were going to guarantee a percentage of the loan.

Q. So you know about Small Business Administration's involvement in that oral commitment that you claim existed?

A. Yes, I did.

Q. The fact is, Mr. Campbell, you knew that Small Business Administration had its own requirements for loan applicants, financial information, documentation which it required before it would approve or go in on a loan with a bank, did you?

A. Yes, I did.

Q. And you didn't have any reason to believe that the money would be coming solely from the Idaho First National Bank without participation by SBA at all, did you?

A. No.

Q. So you knew about SBA's involvement and knew their requirements would have to be satisfied as well. Correct?

A. Yes.

Clearly, given the above testimony, the terms of this alleged contract are not sufficiently definite to enforce. The amount of the loan, originally $174,000, could have gone up or down. The interest rate, originally 13.75%, also could have varied according to the "market," yet the parties had not agreed upon which "market" which would apply. Mr. Campbell merely "assumed" it would be the market mortgage rate, yet he acknowledged that he and the bank had not agreed on that. The loan was to have been made when Black Canyon had sold 150 club memberships, although the type of memberships required was never specified. Finally, as Mr. Campbell testified, until the SBA had committed to participate in the proposed loan, and determined the conditions under which it would participate, such as the amount, the interest rate, the security, etc., there could be no final agreement. Therefore, while Mr. Campbell has alleged that an enforceable oral contract existed between Black Canyon and the bank, his evidence proffered in the summary judgment proceeding did not show any specific, enforceable terms. Thus, the trial court did not err in concluding that the terms of the agreement were too indefinite to constitute an enforceable contract.

## II

We next turn to Black Canyon's assertion that the district court erroneously denied Black Canyon's motion to amend its complaint to add several tort claims, namely: (1) the tort of bad faith based on Idaho First's actions after the formation of the alleged oral contract; (2) the negligent failure of Idaho First to disclose information

showing that the SBA was unlikely to guarantee the loan; (3) the negligent infliction of emotional distress based on Idaho First's actions which damaged Black Canyon's credit rating, reputation, and caused humiliation and suffering; and (4) the breach of fiduciary duty based on Idaho First's actions preceding and following the formation of the alleged contract.

■ Under I.R.C.P. 15(a) "a party may amend his pleading once as a matter of course at any time before a responsive pleading is served...." However, where, as here, an answer and counterclaim have been filed, I.R.C.P. 15(a) provides that "a party may amend his pleading only by leave of court ... and leave shall be freely given when justice so requires...." The grant or denial of leave to amend after a responsive pleading has been filed is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of that discretion. 6 Wright & Miller, Fed. Practice & Procedure ¶ 1484. *Ada County Highway District v. Acarrequi*, 105 Idaho 873, 874–875, 673 P.2d 1067, 1068 (1983) ("The allowance of amendment to pleadings is a matter not to be disturbed absent a showing of clear error.... A court may, in its discretion, allow such amendment, unless to do so would deprive the complaining party of some substantial right."); *Jones v. Watson*, 98 Idaho 606, 610, 570 P.2d 284, 289 (1977) ("As this case had been set for trial at the time of defendant's attempt to amend the answer, leave of the court was prerequisite to amendment. Although leave to amend is to be freely given, I.R.C.P. 15(a), the decision to grant or refuse permission to amend is left to the sound discretion of the trial court.").

■ In determining whether an amended complaint should be allowed, where leave of court is required under Rule 15(a), the court may consider whether the new claims proposed to be inserted into the action by the amended complaint state a valid claim. *Bissett v. State*, 111 Idaho 865, 869, 727 P.2d 1293, 1296 (Ct.App.1986) ("The record which was before the trial court contains no allegations which, if proven, would en-

title Bissett to the injunctive relief he claims. In addition, Bissett has failed to state on appeal any additional allegations which would establish a cause of action.... We hold that the district court did not abuse its discretion in failing to allow amendment of Bissett's complaint.") If the amended pleading does not set out a valid claim, or if the opposing party would be prejudiced by the delay in adding the new claim, or if the opposing party has an available defense such as a statute of limitations, it is not an abuse of discretion for the trial court to deny the motion to file the amended complaint.

In this case the trial court found that Black Canyon's tort claims did not arise "out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading ...," I.R.C.P. 15(c), and thus the proposed amended complaint was barred by the statute of limitations. In support of the trial court's ruling, respondent argues that, in addition to its defense of statute of limitations, the tort claims attempted to be set out in the amended complaint did not raise valid claims; that the tort claims were not based upon the same claim or facts which constituted the alleged oral contract set out in the original complaint; and that the respondent would be prejudiced by the adding of these new claims five and one-half years after the transaction had occurred. In determining whether the trial court abused its discretion in refusing to grant leave to the plaintiff to file an amended complaint five and one-half years after the events, to raise for the first time tort issues, we must evaluate the tort claims sought to be raised. We have already affirmed, in Part I, the trial court's conclusion that no valid oral contract to lend money existed between Black Canyon and Idaho First, and therefore we must evaluate the alleged tort claims in light of the fact that no valid contract to lend money existed.

■ The elements of a common law negligence action are (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection be-

tween the defendant's conduct and the resulting injury; and (4) actual loss or damage. *Brizendine v. Nampa Meridian Irr. Dist.*, 97 Idaho 580, 548 P.2d 80 (1976). The tort claims set out in the amended complaint were primarily based upon negligence, *i.e.*, the breach of some legal duty. We will analyze each in turn.

■ First, regarding Black Canyon's claim of "breach of fiduciary duty" against the bank, Black Canyon cites no Idaho cases which hold that there is a fiduciary duty between a bank and a customer. Our cases hold to the contrary. *Peterson v. Idaho First National Bank*, 83 Idaho 578, 585, 367 P.2d 284, 291 (1961) ("It is generally stated that the relationship between a bank and its general depositor is that of debtor and creditor."); *see also Travelers Indemn. Co. v. State*, 140 Ariz. 194, 680 P.2d 1255 (App.1984); *First Bank of Wakeeney v. Moden*, 235 Kan. 260, 681 P.2d 11 (1984); *Deist v. Wachholz*, 208 Mont. 207, 678 P.2d 188 (1984); *Peters v. Sjoholm*, 95 Wash.2d 871, 631 P.2d 937 (1981), *appeal dismissed, cert. denied* 455 U.S. 914, 102 S.Ct. 1267, 71 L.Ed.2d 455 (1981); *Loucks v. Albuquerque Nat. Bank*, 76 N.M. 735, 418 P.2d 191 (1966); *Ingram v. Liberty Nat. Bank & Trust Co. of Oklahoma City*, 533 P.2d 975 (Okl.1975); *Rivera v. Central Bank & Trust Co.*, 155 Colo. 383, 395 P.2d 11 (1964). Reference is made by appellant to *Dugan v. First National Bank of Wichita*, 227 Kan. 201, 606 P.2d 1009 (1980). Actually, the *Dugan* case is not inconsistent with our case of *Peterson v. Idaho First National Bank*, 83 Idaho 578, 367 P.2d 284 (1961). The Kansas court in *Dugan* stated, "We have been unable to locate any case in which a fiduciary relationship was held to arise solely through a long-standing creditor-debtor relationship or prior dealings between the customer and the bank." 606 P.2d at 1015. The rule expressed in the above cases holds that the relationship in a lender-borrower situation is a debtor-creditor relationship, and not a fiduciary relationship.

■ Next, Black Canyon's proposed amended complaint alleges the "tort of bad faith." Black Canyon asserts that this

Court adopted such a tort in *White v. Unigard*, 112 Idaho 94, 730 P.2d 1014 (1986). While this Court in *Unigard* did hold that a duty exists in an insurer-insured relationship, the breach of which can result in an action for bad faith, the rationale behind that adoption in *Unigard* was based upon the "special relationship which exists between insurer and insured." 112 Idaho at 99, 730 P.2d 1014. The Court in *Unigard* went on to point out "that it is the unique 'personal' (non-commercial) nature of insurance contracts which justifies the imposition of the duty of good faith and fair dealing." *Id.* The reasons stated in *Unigard* for creating a duty by an insurer to an insured, the breach of which can result in the tort of "bad faith breach of an insurance contract," do not apply in a debtor-credit relationship. The *Unigard* opinion noted that insurance contracts are invariably fixed, standardized contracts whose terms are not negotiated and are executed in a noncommercial setting. The insurer prepares the insurance contract, while the insured seldom, if ever, reads—much less understands—the terms of the agreement.

In contrast, the alleged bank loan involved in this case was a commercial transaction between a bank and a business borrower. The bank loan under negotiation was not an "invariably fixed, standardized contract ... in a non-commercial setting," which was the basis for the Court's ruling in *Unigard*. Rather, the transaction here was a commercial one, which would have created a debtor-creditor relationship, for which both the terms and the security for the loan were under negotiation. Accordingly, the policy reasons for establishment of the tort of "bad faith breach of an insurance contract" in *Unigard* is not applicable here. Refusing to recognize such a duty is particularly applicable in this case because, as we have concluded in Part I, there was no valid contract to make a loan. Accordingly, the district court did not abuse its discretion in refusing leave to amend to assert the "tort of bad faith."

■ Next, Black Canyon alleges that Idaho First negligently failed to disclose

information showing that the SBA loan application was unlikely to be approved. In its proposed amended complaint Black Canyon alleges:

> The Bank had an affirmative duty to disclose to Campbell and Black Canyon that it was highly unlikely either that the Bank would approve, or that the SBA would agree to guarantee a loan to Black Canyon in an amount sufficient to pay for the improvements to the Club and the purchase of the building.
>
> . . . .
>
> The Bank breached the foregoing duty, and, as a result, both Campbell and Black Canyon were damaged in amounts to be proved at trial.[1]

Black Canyon has cited no authority for the proposition that a potential lender has an affirmative duty to disclose the likelihood of approval of a potential borrower's loan application. The record discloses no confidential or fiduciary relationship which would give rise to a duty on the part of Idaho First to predict the likelihood of approval of Black Canyon's SBA-guaranteed loan applications. Black Canyon knew as well as Idaho First that the likelihood of approval depended upon whether the applications met the requirements of the SBA. We have been unable to find any case which would impose a legal duty upon Idaho First to predict the likelihood of SBA approval of Black Canyon's loan applications. The case of *Tusch Enterprises v. Coffin*, 113 Idaho 37, 740 P.2d 1022 (1987), relied on by Black Canyon, is factually different from this case and is inapposite. Accordingly, we conclude that the district court did not abuse its discretion in refusing to allow Black Canyon permission to amend its complaint to include an alleged claim of "negligent failure to disclose." *Ada County Highway Dist. v. Acarrequi*, 105 Idaho 873, 673 P.2d 1067 (1983).

■ Finally, as to Black Canyon's tort claim of "negligent infliction of emotional distress," our cases have all held that, unless the emotional distress results in a physical manifestation of an injury, no claim can arise. *Brown v. Fritz*, 108 Idaho 357, 699 P.2d 1371 (1985); *Gill v. Brown*, 107 Idaho 1137, 695 P.2d 1276 (1985). Here, plaintiff's proposed amended complaint alleges only that, "As a proximate result of the Bank's actions complained of herein, Campbell has had his credit rating and reputation damaged, has been humiliated and has suffered severe emotional distress and has been damaged in an amount which shall be proved at trial, and the Bank is liable for said amount." In *Rasmuson v. Walker Bank & Trust*, 102 Idaho 95, 100, 625 P.2d 1098, 1103 (1981), we said, "Inasmuch as there were no allegations of physical manifestations involved in the case at bar, the tort of negligent infliction of emotional distress does not lie." Here, also, the proposed amended complaint made "no allegations of physical manifestations," so the proposed amended complaint did not assert a claim.

■ Each of the tort claims contained in the proposed amended complaint failed to assert a viable tort claim, irrespective of the trial court's conclusion that they were barred by the statute of limitations. Appellant Black Canyon argues, nevertheless, in its reply brief that, "Merely because no law exists affirmatively adopting a particular cause of action does not mean that that cause of action is insufficient as a matter of law." However, as the Court of Ap-

---

1. We note that Black Canyon did not allege that Idaho First either intentionally or negligently failed to properly process or submit either of Black Canyon's loan applications. Both SBA loan applications were forwarded from Idaho First's Emmett branch office to Idaho First's credit administration office in Boise with recommendations for approval and submission to the SBA for final approval. The credit administration, however, rejected these loan applications because they did not meet the SBA's requirements. Emmett branch loan officer Kreps indicated that the loan applications were not approved by the credit administration because "at the time[,] cash flow and the projections that we had sent in were not believable." The record indicates that Black Canyon was aware of the SBA-guaranteed loan application process and that the likelihood of approval depended on whether SBA loan requirements were met. Additionally, the record reflects that Black Canyon not only sought SBA financing from Idaho First during this time frame, but also sought financing, including SBA financing, from other financial institutions, *e.g.*, First Security Bank, Treasure Valley Bank and Grange Mutual Life.

**178**

peals correctly stated in *Bissett v. State*, 111 Idaho 865, 869, 727 P.2d 1293, 1296 (Ct.App.1986), "The record which was before the trial court contains no allegations which, if proven, would entitle Bissett to the injunctive relief he claims. In addition, Bissett has failed to state on appeal any additional allegations which would establish a cause of action.... We hold that the district court did not abuse its discretion in failing to allow amendment of Bissett's complaint." In this case, the district court did not abuse its discretion in refusing to grant leave to Black Canyon to amend its complaint.

■ In addition to the foregoing, the trial court concluded that the tort claims in the proposed amended complaint were barred by the statute of limitations. Given the fact that the motion for leave to file the amended complaint was not filed until five and one-half years after the events alleged to have constituted the new tort claims occurred, and because these new tort causes of action were entirely different from the claim of an oral contract to lend money contained in the original complaint, and because the new claims relied in part upon new facts not alleged in the original complaint, the trial court concluded that the tort claims in the amended complaint did not relate back to the time of filing of the original complaint under I.R.C.P. 15(c), and were barred by the statute of limitations. As a result, the trial court denied leave to amend the complaint. We conclude that the trial court did not err or abuse its discretion in so holding. *Wing v. Martin*, 107 Idaho 267, 688 P.2d 1172 (1984).

### III

■ Finally, we consider Black Canyon's assertion that Idaho First is estopped from denying the existence of the alleged oral contract to make an SBA-approved loan because Black Canyon detrimentally

relied on Idaho First's alleged promise to make an SBA–approved loan. Under contract law, promissory estoppel, when proven, acts as a consideration substitute in the formation of a contract. *Mohr v. Shultz*, 86 Idaho 531, 388 P.2d 1002 (1964).[2] While promissory estoppel may provide consideration for a contract, there must be a sufficiently definite agreement to have an enforceable contract. The district court concluded, and we have affirmed in Part I, that there was not.

For the reasons set forth above, we affirm the district court. Costs to respondent. No attorney fees.

JOHNSON and BOYLE, JJ., and BECKER, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

The majority seemingly demonstrates a proclivity for invading the province of the jury. The existence of a contract and the interpretation of contractual terms are matters which should be determined by the trier of fact rather than by the court via summary judgment. *Johnson v. Allied Stores Corp.*, 106 Idaho 363, 679 P.2d 640 (1984); *Bischoff v. Quong–Watkins Properties*, 113 Idaho 826, 748 P.2d 410 (Ct.App. 1987). This is particularly true where, as in this case, the trier of fact was to have been a jury. *See Riverside Dev. Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982); *Riggs v. Colis*, 107 Idaho 1028, 1030, 695 P.2d 413, 415 (Ct.App.1985). The questions of whether the contract contained a condition precedent and, if it did, whether the terms of that condition were fulfilled, are by definition questions concerning contractual terms. They should therefore have been resolved by trial, not by summary judgment.

Because the majority's determination that the trial court was correct in denying Black Canyon leave to amend its complaint is premised upon its erroneous holding that there was no valid contract, that determina-

---

**2.** In *Mohr* we explained that "[i]n order to allege the defense of promissory estoppel it must be shown: (1) the detriment suffered in reliance was substantial in an economic sense; (2) substantial loss to the promisee acting in reliance was or should have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise as made." 86 Idaho 531, 540, 388 P.2d 1002, 1008 (1964).

tion, too, is in error. Pursuant to I.R.C.P. 15(c), Black Canyon petitioned the trial court to allow it to amend its complaint by adding tort claims which had allegedly arisen out of the same transaction as the contract claims asserted in the original complaint. The majority asserts that it "must evaluate the alleged tort claims [and the propriety of the trial court's refusal to allow the same] in light of the fact that no valid contract to lend money existed." At 175, 176, 804 P.2d at 904, 905 (1991). However, if the issue of the existence of the contract had been properly allowed to go to trial, such an evaluation would not be taking place, and other general principles concerning the appropriate use of Rule 15(c) should have applied. These principles dictate that leave to amend a complaint to state a cause of action which would otherwise be barred by a statute of limitations will be freely granted. The amendment will relate back to the filing date of the original complaint, provided only that both the complaint and the amendment derive from the same conduct, transaction, or occurrence. *Suitts v. First Sec. Bank of Idaho, N.A.*, 110 Idaho 15, 23, 713 P.2d 1374, 1382 (1985); *Wing v. Martin*, 107 Idaho 267, 270, 688 P.2d 1172, 1175 (1984). Accepting that "the rationale of the relation back rule is to ameliorate the effect of the statute of limitations," 6 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1497, 1496 (1971), the key in such cases is to ascertain whether the opposing party has had adequate notice that the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading could give rise to additional causes of action. Wright & Miller § 1497. *See also Wing*, 107 Idaho at 270, 688 P.2d at 1175. If such notice is evident, "[i]t is not unreasonable to require [the defendant] to anticipate all theories of recovery and prepare its defense accordingly." *Zagurski v. American Tobacco Co.*, 44 F.R.D. 440, 442–43 (Conn.1967). *See also Tri–Ex Enters., Inc. v. Morgan Guar. Trust Co. of New York*, 586 F.Supp. 930 (S.D.N.Y.1984) (where issues framed by the original pleading concerned a letter of credit, all parties were clearly provided with notice that all matters surrounding the letter of credit were open to question, and defendants' counterclaim concerning the same letter would relate back to the time of original filing and would not be barred by the statute of limitations).

In the case before us, the original complaint filed by Black Canyon sufficiently set forth a chain of business dealings between Black Canyon, Campbell, and Idaho First to put Idaho First on ample notice that it was those business dealings gone awry which were the gravamen of the suit. The tort claims advanced by Black Canyon should have been allowed to relate back to the time of the filing of its original complaint. The trial court therefore abused its discretion by denying plaintiffs leave to amend on statute of limitations grounds.

Finally, it is noted that Idaho First makes the argument, which apparently is accepted by the majority, that allowing Black Canyon to amend would prejudice Idaho First and cause undue delay. The majority's attention and Idaho First's attention is directed to the trial court's order dated December 12, 1986, setting this case for trial and pre-trial. That order set the cut-off date for the amendment of pleadings at ninety days before trial, or June 19, 1987, and ordered that discovery be completed no later than twenty-eight days before trial, or August 20, 1987. R., 23. Black Canyon's motion to amend was filed well within those limits, on June 11, 1987. Idaho First's arguments concerning delay and prejudice are therefore unpersuasive.

A proposed opinion for the Court, which for unknown reasons failed to command a majority, follows. Notwithstanding that implicit "no confidence" vote, the fact remains that it is structurally sound and supported by case precedent. Moreover, it would have resulted in a trial on the merits rather than a summary judgment of dismissal which precluded an airing of the facts and circumstances where a jury could make the singularly important assessment of witness credibility.

BISTLINE, Justice.

Russell Campbell was a customer of the Emmett Branch of the Idaho First National

Bank (Idaho First). He had sometimes obtained loans from Idaho First without any written application. Shortly before August of 1981, Campbell consulted with the manager of Idaho First's Emmett Branch concerning the formation and management of Black Canyon Racquetball Club. The club was incorporated in August of 1981. In the following month Campbell, acting as president of the club, borrowed substantial sums from Idaho First without any formal written application. With the knowledge of Idaho First's officers, the loan money was used by Campbell to furnish the club.

By October of 1981, Campbell had discussed with Idaho First officers the possibility of borrowing funds to expand and remodel the club. These officers advised Campbell that Idaho First would not loan money for improvements until the club's cash flow improved. Campbell contends that he was assured by the officers that when the club reached a membership level of 150, the club's cash flow would be sufficient for Idaho First to loan the funds. The membership reached 150 but the bank refused to loan more money to Campbell.

Campbell argues that the deposition of Karen Kreps, an employee of Idaho First, establishes that Idaho First, through her, had previously loaned funds to Campbell on the basis of oral commitments. Kreps testified that she understood the terms of the loan would have been for the principal amount of $174,000, with an interest rate of two and three-quarters (2.75) percent over the current prime rate. The rate was to float over the term of the loan, and Kreps also testified that the loan involved a 12 year repayment period. Both Idaho First and Campbell anticipated that a possible source of financing was an SBA (Small Business Administration) guaranty to Idaho First.

Campbell filed two separate loan applications with Idaho First. Both times Idaho First determined that SBA loan requirements were not met, and the loans on this basis were not approved even though the club had in excess of 150 members in February, 1983. Idaho First continued to refuse to issue the funds. In the interim,

Campbell, in anticipation of the loan's approval, engaged contractors to remodel the club. Some of these contractors had begun remodeling while the loan was pending. Their depositions indicate that their commencement of work was predicated in part on the assurances of Karen Kreps to them that there was "no problem" with the Black Canyon loan.

Black Canyon and Campbell (Black Canyon) filed a complaint September 4, 1985, alleging several contract claims arising out of Idaho First's failure to loan money. On June 11, 1987, Black Canyon filed a motion to amend the complaint seeking to add the tort claims of bad faith, misrepresentation, and breach of fiduciary duty. The trial court denied Black Canyon's motion on July 24, 1987, ruling that Counts V through VIII of Black Canyon's proposed amended complaint were barred by the applicable statute of limitations, and that the proposed amendments did not relate back to the time of filing of the original complaint. An amended complaint which included only contract claims was filed by Black Canyon on August 5, 1987.

Idaho First moved for summary judgment. The trial court granted Idaho First's motion on the ground that the alleged oral contract lacked complete and definite terms, and was therefore unenforceable.

The following issues are raised on appeal:

1. Whether the trial court abused its discretion when it denied Black Canyon's motion to amend its complaint on the grounds that the causes of action advanced by the proposed amended complaint were time-barred?

2. Whether the trial court erred in granting summary judgment to Idaho First on Black Canyon's contract claims?

I.

We first turn our attention to the question of whether the trial court abused its discretion when it denied Black Canyon's motion to amend its complaint on the grounds that the causes of action advanced

by the proposed amended complaint were time-barred. I.R.C.P. 15(c) is the operative rule here. It provides in pertinent part:

**Rule 15(c). Relation back of amendments.**—Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

This Court has consistently adhered to the principle that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), adopted in *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 272–73, 561 P.2d 1299, 1305–06 (1977). In the context of Rule 15(c), this principle has dictated that leave to amend a complaint with a cause of action which would otherwise be barred by a statute of limitations will be freely granted, and the amendment will relate back to the filing date of the original complaint, if both the complaint and the amendment derive from the same conduct, transaction, or occurrence. *Suitts v. First Sec. Bank of Idaho, N.A.,* 110 Idaho 15, 23, 713 P.2d 1374, 1382 (1985); *Wing v. Martin,* 107 Idaho 267, 270, 688 P.2d 1172, 1175 (1984). Given that "the rationale of the relation back rule is to ameliorate the effect of the statute of limitations," 6 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1497, 1496 (1971), the key in such cases is to ascertain whether the opposing party has had adequate notice that the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading could give rise to additional causes of action. Wright & Miller § 1497. *See also Wing,* 107 Idaho at 270, 688 P.2d at 1175. If such notice is evident, "[i]t is not unreasonable to require [the defendant] to anticipate all theories of recovery and prepare its defense accordingly." *Zagurski v. American Tobacco Co.,* 44 F.R.D. 440, 442–43 (Conn.1967). *See also Tri–Ex Enters., Inc. v. Morgan Guar. Trust Co. of New York,* 586 F.Supp. 930 (S.D.N.Y.1984) (where issues framed by the original pleading concerned a letter of credit, all parties were clearly provided with notice that all matters surrounding the letter of credit were open to question, and defendants' counterclaim concerning the same letter would relate back to the time of original filing and would not be barred by the statute of limitations).

In the case before us, the original complaint filed by Black Canyon sufficiently set forth a chain of business dealings between Black Canyon, Campbell, and Idaho First to put Idaho First on notice that it was those business dealings gone awry which were the gravamen of the suit. The tort claims advanced by Black Canyon should have been allowed to relate back to the time of the filing of its original complaint. The trial court abused its discretion by denying plaintiffs leave to amend on statute of limitations grounds.

In so holding we are mindful of Idaho First's arguments that by allowing Black Canyon to amend we are prejudicing Idaho First and are acquiescing in undue delay. We direct Idaho First's attention to the trial court's order dated December 12, 1986, setting this case for trial and pre-trial. That order set the cut-off date for the amendment of pleadings at ninety days before trial, or June 19, 1987, and ordered that discovery be completed no later than twenty-eight days before trial, or August 20, 1987. R., 23. Black Canyon's motion to amend was filed well within those limits, on June 11, 1987. Idaho First's arguments concerning delay and prejudice are therefore unpersuasive.

## II.

We next address the question of whether the trial court erred in granting summary judgment to Idaho First on Black Canyon's contract claims. We note at the outset the long-standing principles which guide our decisions in summary judgment cases. Pursuant to I.R.C.P. 56(c), "summary judgment is improperly granted where any genuine issue of material fact remains unresolved." *American Land Title Co. v. Isaak,* 105 Idaho 600, 601, 671 P.2d 1063, 1064 (1983). When determining whether such an issue of material fact exists, we will liberally construe the facts and all rea-

sonable inferences which may be drawn therefrom in favor of the party against whom the summary judgment is sought. *Ulery v. Routh,* 107 Idaho 797, 693 P.2d 443 (1984).

The present case presents two issues of material fact which preclude summary judgment. The first issue is whether a contract existed at all, and if so, whether its terms were sufficiently complete and definite to permit enforcement. The general rule in contract cases, including oral contract cases, is that the existence of a contract and the interpretation of contractual terms are matters which should be determined by the trier of fact rather than by the court via summary judgment. *Bischoff v. Quong–Watkins Properties,* 113 Idaho 826, 828, 748 P.2d 410, 412 (Ct.App. 1987); *Johnson v. Allied Stores Corp.,* 106 Idaho 363, 679 P.2d 640 (1984). This is particularly true where the trier of fact is to be a jury. *See Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 519, 650 P.2d 657, 661 (1982); *Riggs v. Colis,* 107 Idaho 1028, 1030, 695 P.2d 413, 415 (Ct.App.1985). Black Canyon requested a jury trial. Black Canyon contends that a contract did in fact exist and that the loan amount, interest rate, and duration were settled upon with a reasonable degree of certainty. These allegations are supported by the deposition of Russell Campbell (pp. 96–99), the deposition of Karen Kreps (pp. 50–51, as to term and interest rate), and the depositions of Kenneth Johns and Glenn Morrow (the loan would be granted if the club attained a certain membership level) and inferences which can reasonably be drawn from those depositions. Summary judgment in favor of the defendant bank was therefore improperly granted.

Whether Idaho First is estopped from denying the existence of a contract is the second issue of material fact. To prevail on such a claim, Black Canyon must prove the existence of all four elements of promissory estoppel. Those elements are: (1) reliance upon a specific promise; (2) substantial economic loss to the promisee as a result of such reliance; (3) the loss to the promisee was or should have been foreseeable by the promisor; and (4) the promisee's reliance on the promise must have

been reasonable. *Gilbert v. City of Caldwell,* 112 Idaho 386, 391–92, 732 P.2d 355, 360–61 (Ct.App.1987); *Mohr v. Shultz,* 86 Idaho 531, 540, 388 P.2d 1002, 1008 (1964). Evidence pertaining to each of these elements was put forward by Black Canyon. When they were deposed, both Kenneth Johns and Glenn Morrow stated that they had relied on Karen Kreps statements to them concerning the Black Canyon loan in making their decisions to proceed with work on the club, that they had accepted promissory notes from Campbell based on Kreps' assurances, and that Karen Kreps was aware of their reasons for requesting such information (deposition of Kenneth Johns at 6, 10; deposition of Glenn Morrow at 6–9, 33, and 36–37). Given this testimony, and the fact that Black Canyon had requested a jury trial, the resolution of the promissory estoppel issue should have been left to the trier of fact, thereby precluding summary judgment. *Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 518, 650 P.2d 657, 660 (1982). *See also Bowen v. Westerhaus,* 224 Kan. 42, 578 P.2d 1102 (1978).

The summary judgment of the district court should be reversed, and the case should be remanded with instructions to allow the plaintiffs to amend their complaint.