963 F.2d 378
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The AETNA CASUALTY & SURETY COMPANY, a Connecticut
corporation, Plaintiff-counter-defendant-Appellee,
v.
Loretta J. HAUGEN, a single woman, Defendant,
and
Transamerica Insurance Company, a California Corporation,
Defendant-cross-defendant-Appellee,
Ludwig Builders, Incorporated, an Arizona Corporation, et
al., Defendant-counter-claimants-crossclaimants-Appellants.
 No. 90-16621.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1991.
Decided May 1, 1992.
 
 1
 Before WILLIAM A. NORRIS and BOOCHEVER, Circuit Judges, and GILLIAM, District Judge*
 
 
 2
 MEMORANDUM**
 
 
 3
 Ludwig Builders ("LBI") appeals the district court's grant of summary judgment in favor of Aetna Casualty ("AC") and Transamerica Insurance Company ("TIC"). The district court found AC and TIC never had a duty to defend or indemnify LBI for a suit which arose out of LBI's construction and sale of a house. We have jurisdiction under 28 U.S.C. § 1291. We affirm and grant attorney's fees to TIC.
 
 BACKGROUND
 
 4
 Prior to 1984, LBI was a licensed general contractor in Arizona and constructed custom homes. All of the work was subcontracted to other contractors in various trades. LBI purchased contractor's liability coverage from an independent agency. The agency then procured LBI's coverage through TIC from August 1, 1984 to August 1, 1985, and through AC from August 1, 1985 to August 1, 1988.
 
 
 5
 In February 1985, LBI contracted with an engineering firm to design the drainage system of a custom home which LBI planned to build. LBI then subcontracted the construction and installation of the system. On March 25, 1986, LBI sold the custom home with its drainage system to Haugen.
 
 
 6
 In August 1986, silt blocked the drainage system and Haugen sued LBI claiming, among other things, consumer fraud and breach of the implied warranty of habitability and workmanlike manner. She sought costs to repair and replace the drainage system and punitive damages.
 
 
 7
 During the course of the litigation, LBI demanded that AC and TIC provide a defense and coverage for the Haugen claim. Both insurance companies refused the demand.
 
 
 8
 The jury in the Haugen suit found LBI breached the implied warranty of workmanlike manner and committed consumer fraud. Haugen obtained compensatory and punitive damages as well as attorney's fees and costs.
 
 
 9
 A month after the Haugen suit terminated, AC filed a complaint for declaratory relief in federal court. AC sought a declaration that it had no duty to defend or provide coverage for the Haugen judgment. TIC later filed a similar complaint.
 
 
 10
 AC and TIC subsequently filed their own motions for summary judgment against LBI. LBI cross-moved for partial summary judgment on a breach of contract claim. The district court granted AC and TIC's motions and denied LBI's cross-motion. Judgment was entered September 19, 1990. LBI filed a timely notice of appeal on October 10, 1990.
 
 DISCUSSION
 I. Standard of Review
 
 11
 Summary judgment rulings are reviewed de novo to determine whether there are any genuine disputes of material fact and whether the law was correctly applied. Mead Reinsurance v. Granite State Ins. Co., 873 F.2d 1185, 1187 (9th Cir.1988). To defeat a motion for summary judgment, the party bearing the burden of proof must produce evidence sufficient to create a triable issue of fact on each essential element of its case. Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).
 
 II. AC's Coverage
 
 12
 AC's policy provided it would defend and "[would] pay all sums any insured legally must pay as damages due to bodily injury, personal injury or property damage caused by an occurrence and resulting from [the insured's] operations insured by this policy." The policy excluded coverage for "property damage to ... work completed by you or any insured if damage was due to the work or material and equipment supplied by you or any insured." The policy also did not cover "loss of use of property which has not been physically injured (a) by a delay or lack of performance; or (b) by failure of work performed for or by you or any insured to meet the level of performance you said it would."
 
 
 13
 LBI asserts AC was obligated to provide coverage for the Haugen claim because there was an occurrence under the policy, coverable property damage occurred, and the "work completed" exclusion did not apply. We conclude that there was no occurrence and no property damage under the policy and that the work completed exclusion applies. Therefore we affirm the district court's grant of summary judgment in favor of AC on each of these three alternative grounds.
 
 A. Occurrence
 AC's policy defined "occurrence" as
 
 14
 an accident or continuous or repeated exposure to substantially the same conditions, which result in advertising injury, bodily injury, personal injury or property damage, as long as that injury or damage is neither expected or intended by the insured.
 
 
 15
 LBI contends the loss of value of Haugen's home due to the defective work constituted a "continuous or repeated exposure to substantially the same condition." However, Haugen did not claim loss of value but compensation for repairs to the defective drainage system. LBI argues, in effect, that the insurance policy should cover defective performance.
 
 
 16
 An Arizona court faced with virtually identical language found "that mere faulty workmanship, standing alone, cannot constitute an occurrence as defined in the policy, nor would the cost of repairing the defect constitute property damage." United States Fidelity & Guarantee Corp. v. Advance Roofing & Supply Co., Inc., 788 P.2d 1227, 1233 (Ariz.Ct.App.1989). Accordingly, there was no occurrence under Arizona law, and AC properly excluded coverage of the Haugen claim.
 
 B. Work Completed Exclusion
 
 17
 For the reasons set forth in the district court's order, we also conclude that the "work completed" exclusion bars recovery against AC.
 
 C. Property Damage
 
 18
 The lower court's ruling is also affirmed based on this court's finding that coverable property damage did not occur.
 
 AC's policy defines property damage as
 
 19
 (1) Physical damage to tangible property during the policy term, and includes loss of use of such property at any time resulting from such damage; or
 
 
 20
 (2) Loss of use of tangible property which has not been physically damaged provided such loss is due to an occurrence during the policy term.
 
 
 21
 LBI argues the loss of value resulting from the defective system was property damage that was covered under the policy. LBI relies on Minnesota, Illinois, Louisiana, and Montana cases to assert that loss of value is property damage. However, Arizona does not recognize loss of value as property damage. Travelers Indem. v. State, 680 P.2d 1255 (Ariz.Ct.App.1984); McCollum v. INA, 644 P.2d 283 (Ariz.Ct.App.1982). Accordingly, AC properly denied coverage.
 
 III. TIC's Coverage
 
 22
 We also hold that the district court appropriately granted summary judgment for TIC. The TIC policy covered LBI for "property damage" resulting from an "occurrence." The policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected or intended from the standpoint of the insured." This language is virtually identical to the definition of "occurrence" in AC's policy. We affirm the district court's award of summary judgment in favor of TIC for the same reasons that we affirm the award of summary judgment in favor of AC. Moreover, no injury occurred during the period TIC provided coverage, August 1, 1984 through August 1, 1985, precluding coverage under Arizona Law. State v. Glen Falls Ins. Co., 609 P.2d 598, 600 (Ariz.Ct.App.1980) (citing Century Mutual Ins. Co. v. Southern Ariz. Aviation, 446 P.2d 490 (Ariz.1968)).
 
 
 23
 IV. Reasonable Expectation of Coverage through AC
 
 
 24
 LBI argues it is entitled to coverage under the reasonable expectations doctrine. The doctrine allows coverage under an insurance policy:
 
 
 25
 (1) Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective reasonable expectations of the average insured;
 
 
 26
 (2) Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;
 
 
 27
 (3) Where some activity which can reasonably be attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured; or
 
 
 28
 (4) Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.
 
 
 29
 Gordinier v. Aetna Casualty & Surety Co., 742 P.2d 277, 283-84 (Ariz.1987).
 
 
 30
 LBI argues that all four situations exist here, and therefore the doctrine of reasonable expectations requires AC to afford LBI coverage for the Haugen claim.
 
 
 31
 LBI first asserts it could not understand the AC policy and thought the policy covered the Haugen claim. The policy jacket and brochure allegedly touted blanket coverage, therefore LBI argues, it was reasonable for LBI to expect such coverage included the Haugen claim. Second, LBI argues AC did not provide notice or explanations of the exclusions before invoking them to deny coverage of the Haugen claim, and therefore provision (2) of the doctrine applies. Third, LBI points to AC's sales brochure, which advertised that its policy "meets your liability needs.... which offers [contractors] more protection than the standard general liability coverages you're likely to need...." Such advertising activity, LBI argues, created an objective impression of coverage in the mind of a reasonable insured such as LBI. Fourth, LBI contends the insurance agent's letter of October 17, 1985, induced LBI to believe AC covered Haugen's claims.
 
 
 32
 The reasonable expectation doctrine requires more than a "fervent hope usually engendered by loss." Millar v. State Farm Fire and Cas. Co., 804 P.2d 822, 826 (Ariz.Ct.App.1990). The definitions of "occurrence" and "property damage" cannot reasonably be interpreted to cover defective work. In addition, AC's brochure referred to exclusionary provisions, actual coverages and limitations, and advised the reader to review the policy itself. There is no mention of coverage for defective workmanship in the brochure. Moreover, the AC agent wrote the letter to LBI after LBI brought the coverage and this letter is thus irrelevant. See id. at 827 ("The reasonable expectation doctrine applies to events at the time coverage is purchased. Subsequent events are irrelevant."). We conclude that LBI could not reasonably have expected coverage for the Haugen claim.
 
 
 33
 The district court's well-reasoned order granting summary judgment in favor of AC and TIC is affirmed, and both insurance companies are awarded costs on appeal. Additionally, attorney's fees on appeal are awarded to TIC under A.R.S. § 12-341.01. We refer the award of attorney's fees to the trial court for determination of the award amount.
 
 
 34
 AFFIRMED.